## VERNE MARSHALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109814.   Promulgated January 12, 1943.

*George Stewart Holmes, Esq.*, for the petitioner.
*A. R. Shannon, Jr., Esq.*, for the respondent.

OPINION.

Mellott, *Judge:* This proceeding, involving a deficiency in income tax for the calendar year 1939 in the amount of $614.96, was submitted upon a stipulation of facts, which are found accordingly. The sole issue is whether the respondent erred in including in petitioner's income dividends aggregating $2,700, paid upon stock which had previously been transferred by him to a trust created for the benefit of his wife and children.

The theory upon which respondent determined the deficiency is that the rationale of *Helvering* v. *Clifford*, 309 U. S. 331, is applicable. The essence of the cited case is that where "the bundle of rights" retained by the settlor "as a result of the terms of the trust and the intimacy of the familial relationship," resulted in the retention of "the substance of full enjoyment of all the rights which previously he had in the property," the income should be taxed to him under section 22 (a) of the applicable revenue act.

Petitioner is a resident of Cedar Rapids, Iowa, and he and his wife filed a joint income tax return for the taxable year with the collector of internal revenue for the district of Iowa. He is, and at all times material herein was, the editor of the Gazette, a newspaper published at Cedar Rapids, Iowa. On and prior to June 9, 1939, petitioner was the owner of 125 shares of the common stock of the Gazette Co. This stock on that date was delivered by him, as settlor, to himself, his wife, and William C. Crawford, as trustees.

Petitioner filed a gift tax return, reporting the transfer of the 125 shares of stock and paid a gift tax of $677.50. The trustees filed an income tax return for the year 1939, reporting the receipt of $2,700 as dividends and paid a tax of $104. The sum of $2,700, and no more, was distributed by them to the wife. No part of the income or corpus of the trust was used during the calendar year 1939 for the support of petitioner, his wife, or their children, or to pay any other obligation of petitioner.

The trust agreement provides, in general, that the trustees are to hold the property, collect the income, and pay "a fixed annuity of $4,000 per year" to the trustor's wife as long as she shall live. The wife is given a limited power to dispose of the property by will to the settlor's children and grandchildren if she survives him and, in the event that she predeceases him, the trust is to terminate and the property is to be distributed to him. If the wife fails to exercise her limited power of appointment, the settlor having predeceased her, the property is to be held for the benefit of the settlor's children during their lives and, "in the event any of said children are sons," each son is to receive one-half of his share of the corpus when he attains 30 years of age and the remainder of his share when he attains age 35. The

trust is irrevocable and not subject to alteration or amendment by the settlor.

The trustees are given broad discretion in the retention and sale of property "without limitation by any statute or rule of law relating to trust fund investments." They are not required to enter into or assume any personal liability in dealing with the trust estate and their decision whether the income is to be distributed or accumulated, as well as their appraisement and apportionment of it among the beneficiaries, is final and not subject to question by any beneficiary. In the event of the death or resignation of a trustee the trustor, if living, may nominate and appoint a new one. If at any time a conflict of opinion exists among the trustees as to any decision to be made in the administration of the trusts, "the opinion of Verne Marshall as trustee if he is then so acting shall control."

The settlor reserves the right, notwithstanding any provision in the agreement to the contrary, "at his option to direct the Trustees to retain any investment at any time held * * * or to direct the sale or exchange of such investment and to designate the stocks, bonds or other property * * * in which the trust fund or any reinvestment thereof shall be invested; or to direct the issuance of voting proxies under any stock held * * *." The trustees are to be under no liability for any loss arising from any action taken by them at the direction of the trustor; but the "reserve power of controlling management is not to include a power to change the enjoyment in the beneficiaries."

The trustees, in addition to the general provision giving them power "to retain, sell, lease, mortgage, or otherwise encumber any of the [trust] property * * *" are given the:

* * * power to exercise all rights with respect to investments and securities held by them that are or may be lawfully exercised by persons owning similar property in their own right without the necessity of recourse to any authority of law, including the right to settle and compound any claims either in favor of or against the Trustees or the Trust Estate; or enter into any agreements which in their sole discretion are to the advantage of the Trust Estate; or borrow money or extend credit on behalf of the Trust Estate.

Petitioner, as settlor, also delivered to the trustees certain policies of insurance upon his life and the trust instrument contains appropriate references to them. Since the trust agreement shows that he had assumed the duty and responsibility of making the payment of all premiums, the trustees being "under no obligation whatever in respect thereto," and inasmuch as the parties have directed all of their arguments upon brief to the portions of the trust instrument referred to above, it has not been deemed necessary to make any detailed reference to the provisions relating to the insurance policies.

The trust, as to the insurance policies, is revocable, and the trustor "reserves the right by his act alone, and without the consent or approval of the Trustees, to sell, assign or hypothecate" them; "to exercise any option or privilege granted by" them; "to borrow any sum" on them; and to "receive all payments, dividends, surrender values * * * etc."

Shorn of its legal phraseology, the trust instrument leaves in the settlor practically every power which he had over his property prior to its execution and, borrowing the language of the Court in the *Clifford* case, "it is hard to imagine that * * * [he] felt himself the poorer after this trust had been executed, or if he did, that it had any rational foundation in fact." The income "remains in the family" and he retains complete control over the investment, thereby having "rather complete assurance that the trust will not affect any substantial change in his economic position." Such lingering doubt that this is true, as may exist from an examination of some of the provisions of the trust including the provision for plural trustees, is dispelled by the provision making petitioner's opinion and discretion controlling. Therefore, the facts in the instant proceeding are, in essence, parallel to those in the *Clifford* case, save in one particular—the length of the term. This is strongly relied upon by petitioner, he pointing out upon brief that certiorari had been granted by the Supreme Court "because of the importance to the revenue of the use of such short term trusts in the reduction of surtaxes." This, he says, makes "any statements which might have been made in that opinion which might be susceptible to applying to a different state of facts * * * *dicta* only."

So much has been written by the Circuit Courts of Appeals, the District Courts, text writers, and the Board of Tax Appeals upon the general subject of the application of the doctrine of the *Clifford* case that we hesitate to attempt to make a complete review or summary. It is true that in some of the earlier cases the courts declined to apply the rationale of the *Clifford* case where the term of the trust was the lifetime of the beneficiary. *Commissioner* v. *Branch* (C. C. A., 1st Cir.), 114 Fed. (2d) 985; *Helvering* v. *Palmer* (C. C. A., 2d Cir.), 115 Fed. (2d) 368; *Frederick Ayer*, 45 B. T. A. 146, 152. It is also true that in some of the later cases the length of the term has been deemed to be of some importance, *Commissioner* v. *Armour*, 125 Fed. (2d) 467; *Meyer Katz*, 46 B. T. A. 187 (on appeal, C. C. A., 7th Cir.) ; *Commissioner* v. *Betts* (C. C. A., 7th Cir.), 123 Fed. (2d) 534; and *Jones* v. *Norris* (C. C. A., 10th Cir.), 122 Fed. (2d) 6. *Suhr* v. *Commissioner*, 126 Fed. (2d) 283; *Price* v. *Commissioner* (C. C. A., 6th Cir.), 132 Fed. (2d) 95. We do not intimate that any of the cases were decided incorrectly or that they have been over-

ruled by later cases. It is not without significance, however, that the Circuit Court of Appeals for the First Circuit, in *White* v. *Higgins*, 116 Fed. (2d) 312, although the trusts there involved were not short term trusts, pointed out that Justice Douglas had held in the *Clifford* case that "no one fact is normally decisive," and concluded that the settlor's continued dominion over the corpus led "to the conclusion that as a matter of law the income of the trusts is taxable to the respective grantors." A few months later the same court remanded to the Board of Tax Appeals for consideration of the applicability of section 22 (a) a case involving a 15-year trust. *Commissioner* v. *O'Keeffe*, 118 Fed. (2d) 639. Recently (Nov. 16, 1942) the Supreme Court remanded to the Circuit Court of Appeals for the Seventh Circuit for remand to the Board of Tax Appeals "to reach a conclusion on 22 (a)," a case involving three trusts created in 1930 by John Stuart for the benefit of his children. The children were 18, 23, and 26 years of age at the time the trusts were created and "* * * the directions were that the trustees should for fifteen years 'pay over and distribute, in reasonable installments,' to the beneficiaries so much of the net income 'as they in their sole discretion shall deem advisable, the undistributed portion of such income to be added to and become a part of the principal of the Trust Fund.' After the fifteen years, the entire net income was to be paid to the beneficiary for and during her life." *Helvering* v. *Stuart*, 317 U. S. 154. The Second Circuit did not hesitate to apply the rationale of the *Clifford* case to a ten-year trust in *Commissioner* v. *Berolzheimer*, 116 Fed. (2d) 628, though it declined to do so in a group of cases where the trustor was not the dominant trustee and the trusts were for shorter or longer terms. (See e. g., *Commissioner* v. *Jonas*, 122 Fed. (2d) 169; *Commissioner* v. *Barbour*, 122 Fed. (2d) 165; *Commissioner* v. *Woolley*, 122 Fed. (2d) 167; and *Commissioner* v. *Elias*, 122 Fed. (2d) 171.) The last group of cases is not particularly pertinent to our present question; but the observation of the court in the *Elias* case to the effect that "the whole nexus of relations between the settlor, the trustee and the beneficiary" must be considered, is a guide post in a case such as the present.

The function of the length of the term was thought to be, in *Howard Phipps*, 47 B. T. A. 357, 364 (on appeal, C. C. A., 2d Cir.), "no more than to act as an indicator or contributing factor in the determination of the other two criteria [control over the corpus by the grantor and intimate family relationship with the beneficiaries]." This was also the view expressed in *James A. Hogle*, 46 B. T. A. 122 (reversed, C. C. A., 10th Cir., Nov. 25, 1942), and in *Morton Stein*, 41 B. T. A. 994, the trust instrument in the latter case being in all essential respects similar to the one executed by this petitioner except that it could

be altered, modified, or varied, provided the alteration did not result in the payment of the income to the settlor during the lifetime of his wife.

In *Cory* v. *Commissioner*, 126 Fed. (2d) 689; certiorari denied, 317 U. S. 642, the duration of the trusts was restricted to ten years, or to the death of the settlor or to the death of his wife and children, whichever event should first occur. The settlor "subtly reserved complete dominion over the trustee" and hence over the trust property and administration. The court refused to be "hampered by the calendar" and said : "If there is any significance in the length of time it is in relation to the mortality tables." Quoting with approval the following excerpt from 27 Virginia Law Review, 551, 552 :

It is the blend of all the reserved rights, not any one right, which leads to a conclusion that the grantor has retained the incidents of "substantial ownership" and is, thus, the proper taxable person.

the court held that the facts there present made the case similar to *Helvering* v. *Horst*, 311 U. S. 112, since it appeared that the taxpayer had "made a gift of income while retaining the substance of ownership of the principal which produced the income."

Many cases involving taxability of the income of a trust lacking in substance had been decided by the Board of Tax Appeals prior to the promulgation by the Supreme Court of its opinion in the *Clifford* case. Indeed it was felt that the rule taxing to the settlor the income of such a trust was so well settled that most of the proceedings were being disposed of by unpublished memorandum opinions. The *Clifford* case iself was so disposed of. Another was *Albert Penn*, Docket Nos. 90761 and 90762; affd. (C. C. A., 8th Cir.), *Penn* v. *Commissioner*, 109 Fed. (2d) 954. Decision in each case was based primarily upon the fact that "the trusts were lacking in substance and left in the grantor substantial rights and interests in the trust property as well as rather complete powers of control over and management of the trust property." *Estate of A. C. O'Laughlin*, 38 B. T. A. 1120; affd. (C. C. A., 7th Cir.), *sub. nom. First National Bank of Chicago* v. *Commissioner*, 110 Fed. (2d) 448; *Benjamin F. Wollman*, 31 B. T. A. 37; *William C. Rands*, 34 B. T. A. 1107. In none, or at least in few, of the cases was the length of the term thought to have any particular significance.

In *Reginald B. Parsons*, 44 B. T. A. 1142, the settlor was required to include in his income the capital gains realized by a trust created by him, the income of which was payable to him for his life. This conclusion was based upon his control over the trustee and hence over the corpus. In the opinion it was said : "The fact that the trust is for petitioner's lifetime does not change the result." (Citing *Morton Stein, supra.*) In *Ellis H. Warren*, 45 B. T. A. 379 (on appeal C. C. A.,

6th Cir.), opinion was expressed that, while the degree of control held by the grantor is relatively unimportant in a short term trust, it must appear, in the case of a long term trust, "that the grantor has a greater degree of control over the trusts." *Helvering* v. *Elias, supra,* was thought to support this view. Somewhat the same view was expressed in *Howard Phipps, supra,* in which the trust was not to terminate until the death of the settlor's wife and child, beneficiaries under it, and in *Commissioner* v. *Armour, supra,* in which the court remarked that the term is "not always decisive" though it is "of great weight and frequently determinative."

An examination of some of the cases in which the length of the term has been discussed and referred to as supporting the determination that the income was not taxable to the settlor indicates that the conclusion reached was also justified upon other grounds. Thus, in *Commissioner* v. *Betts, supra,* the settlor was not a trustee and could not name himself as such, he reserved no right to hold any of the trust property, the income was distributable to persons other than himself and he had no dominion over it. In *Commissioner* v. *Armour, supra,* the Board of Tax Appeals concluded, and the court said "rightfully," that the settlor did not remain in substance the owner of the property. The powers retained by the settlor were not so extensive as those retained in the *Clifford* case and "the immediate family intimacy present in the *Clifford* case was lacking." In *Jones* v. *Norris, supra,* the grantor was to receive none of the benefits of corpus or income during the tenure of the trust and "the record does not show that the grantor ever received any economic benefit from either the corpus or the income of the trust." The same was true in *Meyer Katz, supra.* *Suhr* v. *Commissioner, supra,* does not fall within this category; for the Circuit Court of Appeals for the Sixth Circuit seems to have taken the view that the "shortness of the term" is such an important element that its absence precludes taxation of the income to the settlor under the rationale of the *Clifford* case. Compare, however, *Commissioner* v. *Buck,* 120 Fed. (2d) 775; *Helvering* v. *Bok,* 132 Fed. (2d) 365, affirming *Mary Louise Bok,* 46 B. T. A. 678; and *Brown* v. *Commissioner,* 131 Fed. (2d) 640, affirming *Antoinette K. Brown,* 46 B. T. A. 782.

It may be that the Supreme Court or a majority of the Circuit Courts of Appeals will ultimately adopt the view that a grantor can not be taxed under section 22 (a) of the revenue act, regardless of the control which he retains over the trust corpus and income and regardless of the intimacy existing between him and the trustees and beneficiaries, if the trust is to continue for a substantial or indefinite period of time. With all due deference to the courts taking this view, which at present seem to be in the minority, the present view of this tribunal

is that the length of the term is only one of the factors to be taken into consideration. It has been considered in the instant proceeding; but, for the reasons pointed out in the earlier portion of this opinion, conclusion has been reached that the Commissioner committed no error in including the income of the trust created by this petitioner in his gross income.

Reviewed by the Court.

*Decision will be entered for the respondent.*

ARUNDELL, *J.*, dissents.