LORENZ IVERSEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 98592, 100086, 103779, 108444.   Promulgated May 9, 1944.

*W. A. Seifert, Esq., William Wallace Booth, Esq.,* and *A. G. Walle-stedt, C. P. A.,* for the petitioner.

*Orris Bennett, Esq.,* for the respondent.

766

OPINION.

SMITH, *Judge*: Respondent's first and principal contention is that petitioner is taxable on all of the income of the five children's trusts for all of the years involved under section 22 (a), Internal Revenue Code, under the doctrine of *Helvering* v. *Clifford*, 309 U. S. 331. He makes the further, or alternative, contentions with respect to those trusts (1) that petitioner is taxable on the royalties paid to the trustee as assignee of petitioner's royalty contract with the Mesta Machine Co. under the doctrine of *Helvering* v. *Horst*, 311 U. S. 112; *Helvering* v. *Eubank*, 311 U. S. 122, and *Harrison* v. *Schaffner*, 312 U. S. 579; (2) that petitioner is taxable in 1934 and 1935 under section 167 (a) (1) and (2) of the Revenue Act of 1934, under the doctrine of *Helvering* v. *Stuart*, 317 U. S. 154, on so much of the income of the trusts as might have been used in those years in payment of his unliquidated obligations under the Donner agreement and his indebtedness to the Fidelity Trust Co.; and (3) that petitioner is likewise taxable under section 167 on all of the income of the trusts for his two minor sons, John and Robert, during their minorities (John became of age January 21, 1934, and Robert April 16, 1937).

As to the Mayer-Dixon trust, respondent contends that petitioner is taxable on all the income for all of the taxable years involved under sections 166 or 167, or both.

We think that the respondent must be sustained in his contention that petitioner is taxable on all of the income of the five children's trusts under section 22 (a) because of his reserved interest in and powers over the principal and income of the trusts.

First, petitioner had the right to direct the trustee to use either principal or income of the trusts without limitation to satisfy his liability under the Donner agreement (see article one, paragraph (2) above). That liability amounted to $559,500 at January 1, 1934, and $139,913.53 at January 1, 1935. It was fully paid during 1935.

Petitioner had absolute and exclusive control over all distributions of trust income. None of the beneficiaries could receive any distribution from the trusts during his lifetime except as he directed. He had the right to terminate the trusts at any time and to have any or all of the principal distributed to the beneficiaries. He had the right to control all investments of trust funds. He could not only veto any purchase or sale of the securities proposed by the trustee, but he could require the trustee to purchase, sell, or exchange any securities which he himself might suggest. He had the right to direct the trustee in voting all stock held in the trusts. Finally, he retained the power to perform any act necessary to the determination of, or to make settlement of, any controversy involving the rights of any of the parties or their assigns under the Mesta, Donner, and Fink agreements.

All of those interests, rights, and powers were expressly reserved to the petitioner under the trust agreements. While no one of them might be deemed sufficient in itself to bring this case under section 22 (a) and the doctrine of the *Clifford* case, their cumulative effect is persuasive. When we consider in addition to the rights enumerated the privileges which petitioner enjoyed in the use of the trust income through the close family relationship which existed between him and the beneficiaries, there is little left in the trust conveyances to evidence completed gifts to the children.

The Supreme Court said in *Helvering* v. *Stuart, supra*, that:

* * * Economic gain realized or realizable by the taxpayer is necessary to produce a taxable income under our statutory scheme. * * *

That economic gain for the taxable year, as distinguished from the non-material satisfactions, may be obtained through a control of a trust so complete that it must be said the taxpayer is the owner of its income. * * * [Citing *Helvering* v. *Clifford, supra; Helvering* v. *Fuller*, 310 U. S. 69.]

Petitioner's economic gain was definite enough as to the trust income or principal that might have been used to satisfy his financial obligations, either at his direction (as to the obligations under the Donner agreement) or in the discretion of the trustee (as to his obligations as guarantor of the notes held by the Commonwealth Trust Co. and the Fidelity Trust Co.). (See article one, paragraphs (1) and (2), set out above.)

Against the conclusion which might be urged, from a technical construction of the trust agreements, that petitioner stood to realize no economic benefit from the trust income that was to be either distributed to the beneficiaries (pursuant to his direction) or added to principal, stand the facts that actually large amounts of such income did find their way into petitioner's hands through the channels of close family relationship. First, there were the "Christmas gifts"

of $50,000 which the beneficiaries made to petitioner out of trust income in December 1934 and January 1935. Later, in 1937, there were the withdrawals from the children's special accounts of $750,000 of trust income for petitioner's use in his negotiations for the construction of a new plant in Great Britain. While the evidence is that these gifts were entirely voluntary and that the withdrawals from the special accounts were made with the consent of each of the children, the inference is that all of the available trust income may have remained "in substance at the disposal of the settlor." *Helvering* v. *Stuart, supra.* (S. Rept. 665, 72d Cong., 1st sess., pp. 34, 35.) The children had no choice but to comply with whatever request for funds petitioner might make, or else be cut off from any further income during petitioner's lifetime. Thus, petitioner's control over the income distributions gave him virtual control over the beneficiaries' use of the income as well. Cf. *Rollins* v. *Helvering* (C. C. A., 8th Cir.), 92 Fed. (2d) 390.

The difficulty of applying the doctrine of the *Clifford* case has been dwelt upon at length by this and other courts. See cases discussed in *Verne Marshall*, 1 T. C. 442. In every case we must carefully examine the facts both in their relation to each other and to the criteria afforded us.

In the recent case of *Louis Stockstrom*, 3 T. C. 255, we held a grantor taxable under section 22 (a) on all of the income of ten trusts which he had created primarily for the benefit of his children and grandchildren. We found that the reservation by the grantor of broad administrative powers over trust corpus, combined with his power to control the distribution of income, brought the case under the rule of *Helvering* v. *Clifford, supra.* There, as in the instant case, the grantor had reserved broad administrative powers over the corpora of the trusts and, in addition, the power to control all distributions of trust income to the beneficiaries. In some of the trusts in the *Stockstrom* case he could shift the income from one beneficiary to another and in all of them he could withhold distributions entirely and cause the income to accumulate. As in the present case, he had no reversionary interest in the corpus of any of the trusts.

The fact that the grantors in the *Clifford* and *Stockstrom* cases were also the trustees does not distinguish those cases from the one under consideration. The interests and powers which the grantors there reserved to themselves as trustees were no greater in substance than those which petitioner reserved to himself as grantor. It is the scope of the control over the trust property by the grantor and not the method by which that control is to be exercised that governs. By declaring himself trustee a grantor reserves *pro forma* all of the administrative and managerial powers inherent in the trusteeship. As

grantor he may add to those powers as he wishes, and it matters not whether he is to exercise them as trustee or as grantor. In this respect a grantor who reserves powers as grantor is perhaps in a less favorable position tax-wise than one who reserves them as trustee. For a trustee is charged with a fiduciary obligation to the beneficiaries which does not encumber a grantor. Cf. *Helvering* v. *Stuart, supra; Williamson* v. *Commissioner*, 132 Fed. (2d) 489.

Petitioner had important control over the trust income in his right either to distribute it to or withhold it from any one of the beneficiaries. Thus, during the lifetime of the petitioner the beneficiaries were as completely dependent upon his bounty as if no trusts had ever been created. Their incomes from the trusts were entirely "subject to his whims." *Commissioner* v. *Buck*, 120 Fed. (2d) 775. The retention by the grantor of the power to control the disbursements of the trust fund was considered sufficient to justify taxing the income to him under section 22 (a) in *Brown* v. *Commissioner*, 131 Fed. (2d) 640. See also *Warren* v. *Commissioner*, 133 Fed. (2d) 312; affirming 45 B. T. A. 379; *Williamson* v. *Commissioner, supra; Commission* v. *Buck, supra;* and *Foerderer* v. *Commissioner* (C. C. A., 3rd Cir.), 141 Fed. (2d) 53.

What is perhaps a more important ground for petitioner's claiming a distinction between this and the *Clifford* case is that under the terms of the trust agreement there the corpus was to revert to the grantor upon termination of the trust, which was to exist for a maximum term of five years, whereas in the instant case there is no provision in the trust agreements for a reversion to the petitioner of any of the corpus. It is provided in each trust agreement here that after the death of the donor the corpus is to be distributed to the beneficiary at certain stated ages (see article two above). There is no assurance, however, that the trust shall continue in existence until petitioner's death. It is provided in article two that:

Donor reserves the right from time to time to accelerate the termination of this trust agreement as to *all or any part* of the trust estate and to direct the Trustee to make distribution of *all or any part* thereof to the beneficiary. [Italics supplied.]

The plain meaning of these provisions is that the petitioner could have terminated the trusts at any time. It is uncertain whether in case of such termination of the trust in whole or in part the trustee would have been required to pay over to the beneficiary all or any part of the corpus of the trust which was thus terminated. It is plain, we think, that a power to terminate a trust at will adds materially to the "bundle of rights" under which a grantor's liability under section 22 (a) is imposed.

Even if we construed the trust agreements as prohibiting the reversion of any of the corpus to petitioner during his lifetime, the situation here would be no less receptive to the doctrine of the *Clifford* case than was that in the *Stockstrom* case. The grantor there retained no reversionary interest in the trusts. Also in *Ellis H. Warren, supra,* where we held the grantor taxable under the *Clifford* case on the income of three family trusts, all long term trusts, over which he retained broad powers of control similar to those reserved by petitioner, there was no provision in the trust agreement for the reversion of corpus to the grantor. See also *Commissioner* v. *Buck, supra,* where the grantor had reserved no reversionary rights in either corpus or income.

In their briefs both petitioner and the respondent seem to accept the trusts under consideration as long term trusts, the petitioner claiming that that fact argues against the application of the *Clifford* case and the respondent claiming that the length of the term of the trusts is not determinative and citing *Warren* v. *Commissioner, supra; Helvering* v. *Stuart, supra; Helvering* v. *Fuller, supra; Williamson* v. *Commissioner, supra; Frederick B. Rentschler,* 1 T. C. 814; and *Verne Marshall, supra,* to which might be added *Commissioner* v. *Buck, supra.* The only significance, however, of the length of the term of the trust is that the longer the term the more important becomes the degree of control by the grantor. *Helvering* v. *Elias,* 122 Fed. (2d) 171.

Arguments are made by both parties as to petitioner's motives in creating the trusts. The respondent contends that it was tax avoidance and the petitioner contends that it was to create independent estates for his children, and particularly for his son Andreas, who had suffered a permanent physical disability in early childhood.

We are not so much concerned here with petitioner's motives as with the consequences of his acts. As was said in *Richardson* v. *Smith,* 102 Fed. (2d) 697, "with few exceptions the law attaches legal consequences to what parties do, quite independently of their private purpose or intent." Regardless of petitioner's motives, the result of his acts in creating the trusts was to reduce his income taxes by spreading large amounts of income, which would otherwise have been taxable to him, among the members of his immediate family and their fiduciaries.

It is appropriate to observe, too, that petitioner created the trusts not out of accumulated wealth or *realized earnings,* but by assigning to the trustee the source of his earnings. The royalties accruing to petitioner under the Mesta agreement were the principal source of trust income. Petitioner was the active president and a large stockholder of Mesta Machine Co. and his royalties were to be based

on the earnings of that company. In view of this integration of his royalty rights with his services to the contracting company, there would be a serious question as to whether in any event he would not be taxable on the royalties under the *Horst*, *Eubank*, and *Schaffner* cases. In *Hogle* v. *Commissioner*, 132 Fed. (2d) 66, the grantor assigned to his children in trust a marginal securities trading account, retaining the power to manage and operate the account. It was held that the income from the account was taxable to the grantor because it resulted from the exercise of his personal skill and judgment and was in substance his personal earnings.

It was unusual, at least, for petitioner, in the prime of life (he was only 56 years of age at the time the trusts were created) and at the peak of his business career, and facing, as he was, a crucial period in his financial affairs, to assign over to his children the very means by which he might have expected to achieve ultimate financial success.

We think that all of the circumstances of the creation and operation of the trusts fully justify the respondent's determination that petitioner is taxable on the income under section 22 (a) and *Helvering* v. *Clifford, supra.*

Holding as we do that petitioner is taxable on all the income of the five children's trusts under section 22 (a), it is not necessary for us to consider the respondent's alternative contentions as to those trusts.

The remaining issue relates to petitioner's liability for tax on the income of the Mayer-Dixon trust. As to this issue it seems to us that the facts speak too plainly to call for much discussion. In short, petitioner furnished his two daughters large amounts of money for the purpose of establishing a trust whose income was to be used to pay the premiums upon policies of insurance on his life. If petitioner himself had posed as grantor of the trust he would have been taxable on the income under the explicit provisions of section 167 (a) (3) of the applicable revenue act.[1] By having his daughters assume the role of grantors he hoped to avoid that tax liability. The evidence permits of no other explanation of his acts. It is not shown that petitioner ever had any intention of making his daughters an outright gift of the funds which they used to establish the trust.

---

[1] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

  (a) Where any part of the income of a trust—

    \*       \*       \*       \*       \*       \*       \*

    (3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o), relating to the so-called "charitable contribution" deduction) ;

then such part of the income of the trust shall be included in computing the net income of the grantor.

Since this trust was created with funds which petitioner furnished for that purpose, we must conclude that he is the grantor of the trust. *Lehman* v. *Commissioner*, 109 Fed. (2d) 99; certiorari denied, 310 U. S. 637. As grantor of the trust petitioner is taxable on such part of the income as might be used to pay premiums on policies of insurance on his life. Sec. 167 (a) (3).

The net income of the Mayer-Dixon trust for some of the years 1934 to 1939, inclusive, was in excess of the premiums paid upon the policies. The respondent argues that the petitioner is taxable upon the entire net income of the trust, since the excess income for any year not used to pay premiums could have been so used during the following year and since additional policies could have been transferred to the insurance trust. We do not think that this is a proper construction of the statute. Section 167 (a) (3) makes a grantor of a trust taxable upon only such part of the income as "may be, applied to the payment of premiums upon policies of insurance on the life of the grantor." We think that this means such part of the income as under the terms of the trust agreement may be applied upon the current year's premiums on policies outstanding. See *Genevieve F. Moore*, 39 B. T. A. 808; *Frank C. Rand*, 40 B. T. A. 233; affd., 116 Fed. (2d) 929; certiorari denied, 313 U. S. 594; *Commissioner* v. *Mott*, 85 Fed. (2d) 315; *Corning* v. *Commissioner*, 104 Fed. (2d) 329. Under the terms of the trust agreement the income of the Mayer-Dixon trust was to be used only for the payment of premiums on policies of insurance on petitioner's life held in the insurance trust. We think that the excess of the trust income over the amount of such premiums is not taxable to petitioner. See *Joseph Weil*, 3 T. C. 579.

Petitioner's tax liability for the years 1934 to 1939, inclusive, will be recomputed in accordance with this opinion and the stipulations of the parties.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

BLACK, *J.*, concurring in the result: I am in entire agreement with the majority opinion as to the taxability of the income of the trust created to pay premiums on life insurance policies taken out on the life of petitioner. I also concur in the result reached as to the five trusts created April 15, 1932, but I do not concur in some of the reasons given in the majority opinion. For example, in speaking of the right which the settlor reserved to terminate the trusts and thus accelerate the time of enjoyment by the beneficiaries, it is said:

The plain meaning of these provisions is that the petitioner could have terminated the trusts at any time. It is uncertain whether in case of such

termination of the trust in whole or in part the trustee would have been required to pay over to the beneficiary all or any part of the corpus of the trust which was thus terminated. * * *

If the settlor had exercised his right to terminate the trusts and thus accelerate the time of enjoyment by the beneficiaries, I do not think there is any doubt but the trustee would have had to turn over the net proceeds of the trusts to the beneficiaries after the debts and obligations of the trust estates were satisfied. I do not agree with the majority opinion wherein it says that there was uncertainty about this. Also I do not agree that the retention by the grantor of an irrevocable trust of the right to accelerate the time of enjoyment by the beneficiary of the rights granted him under the trust is the retention of any such control by the settlor as would justify the taxability of the income of the trust to him.

In the recent case of *Estate of Harry Holmes*, 3 T. C. 571, the grantor of the trusts had retained the right to terminate the trusts at any time and thus accelerate the time of enjoyment by the beneficiaries, but he retained no power to revest the trust corpus or any part thereof in himself or to change the portions granted to any beneficiary, such as was present in *Commissioner* v. *Buck*, 120 Fed. (2d) 775. We held that this retention by the settlor of the power to accelerate the time of enjoyment by the beneficiaries did not make the value of the trust corpus includible in decedent's gross estate under section 811 (d), I. R. C.

For substantially the same reasons as expressed by us in the *Holmes* case that the corpus was not includible in decedent's gross estate under section 811 (d), I do not think that the retention by the settlor in the instant case of the right to accelerate the time of enjoyment to the beneficiaries would afford any reason to include the income of the trust estates as petitioner's income under section 22 (a). But while I do not agree to that part of the majority opinion, I concur in the result reached in the majority opinion because of the following provisions in article four of the trust indentures:

During the lifetime of the Donor—

(a) the Trustee shall not sell, purchase or exchange any securities at any time in the trust estate, without the written consent of the Donor;

(b) the Trustee shall make sales, purchases or exchanges upon the written request of the Donor;

(c) the Trustee shall vote the securities in the trust estate on any corporate matter as directed by the Donor.

These were very broad powers of control which the settlor reserved unto himself and justify, I think, the taxation of the income of the trust estates to the settlor under section 22 (a), following such cases as *Frank G. Hoover*, 42 B. T. A. 786; *Williamson* v. *Commis-*

*sioner*, 132 Fed. (2d) 489; *Ellis H. Warren*, 45 B. T. A. 379, affd., per curiam (C. C. A., 6th Cir.), 133 Féd. (2d) 312; and *Louis Stock-strom*, 3 T. C. 255, following the Supreme Court's decision in *Helvering* v. *Clifford*, 309 U. S. 331. These cases, or at least some of them, are cited and relied upon in the majority opinion and I believe they support the conclusion therein reached. I, therefore, concur in the result.

LEECH, MELLOTT, TYSON, and DISNEY, *JJ.*, agree with the above.