LEWIS A. CUSHMAN, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110284. Promulgated December 27, 1944.

*Jacob Mertens, Jr., Esq.,* and *Martin A. Schenck, Esq.,* for the petitioner.

*Carl A. Phillipps, Esq.,* for the respondent.

514

516

OPINION.

Tyson, *Judge*: Respondent determined that the net income of the "L. A. Cushman, Jr. Trust" in 1938 in the sum of $18,714.81 is taxable to the petitioner, grantor thereof, under the provisions of sections 22 (a), 166, and 167 of the Revenue Act of 1938. His only contentions are that the net income is taxable to the petitioner under sections 22 (a) and 167. We shall now consider respondent's contention that the net income of the trust is taxable to petitioner under section 22 (a).

Paragraph 6 of the trust instrument provides that the trust is to be irrevocable and that the grantor "hereby surrenders all interest in the property constituting the trust estate."

The two children were minors in the taxable year. At no time has any trust income been used for their education, maintenance, or support, or been otherwise applied for their use or benefit. Except for payment of the expenses of trust administration and taxes, it has been accumulated, and it is the accumulation of $18,714.81 during the taxable year which is the basis of the deficiency herein. The petitioner was financially able to, and in fact did, support the children at all times since the trust was established.

Under the laws of the State of New York, the father is under a primary duty to support and educate his minor children. *Lillian M. Newman*, 1 T. C. 921, 926, and cases cited therein.

Paragraph 2 of the trust instrument provides that the trustees, who were petitioner and his wife, should "hold, manage, invest and reinvest" the trust estate, "shall collect the income therefrom," and after paying all trust expenses and taxes, "shall pay to or apply the same to the use of the children of Grantor * * *." Similar provisions apply to the "children and issue of any deceased child" during the life of the surviving child. Under this provision of paragraph 2, we think the trustees clearly had the right in their discretion to apply the current net income, or at least so much as was necessary, to the maintenance, support, and education of the minor children, cf. *David M. Heyman*, 44 B. T. A. 1009, 1016, 1018, unless, as specified in paragraph 5, they chose to exercise the right "to accumulate [the net income] for the account of Grantor's said children * * * during their respective minorities."

Under paragraph 4 of the trust instrument, the following controls were reserved to petitioner in his individual capacity as "grantor": (1) "Trustees shall from time to time, but only upon the written direction of Grantor * * * sell any or all of the property constituting the trust estate at the prices and upon the terms contained in such direction"; (2) "Trustees shall invest and reinvest any funds held in the trust estate in such stocks, bonds and securities of corporations, domestic or foreign, and/or governments, domestic or foreign, or in

other property and at such prices and upon such terms as may be contained from time to time in written directions from Grantor during his lifetime and competence  *  *  *"; (3) subject to limitations imposed by (1) and (2) above, the "Trustees may become a party to any reorganization, consolidation, merger or other capital readjustment of any corporation, the stocks or securities of which may at any time be held in the trust, and may participate therein in all respects, as fully as though they were the individual owners of such stocks or securities."

In *Frank G. Hoover*, 42 B. T. A. 786, we considered a situation which is very similar to the one presented here. In that case the taxpayer created a trust which, as it related to the taxable year 1935, was irrevocable until January 1, 1936, at which time the trust would terminate if the taxpayer were then living, and the corpus would revert to him. If the taxpayer were not then living the trust would continue during the life of the wife, who was named beneficiary of the net income for life, to be paid her quarterly or at such times as she might request. A bank was named as trustee and the corpus of the trust consisted of stock in a corporation in which the taxpayer was actively interested. The taxpayer reserved to himself as grantor the right to instruct the trustee as to any change in investment, both as to the principal fund and as to the income that might not be distributed. He also reserved during his lifetime the right or proxy to vote or to direct the voting of the stock covered by the trusteeship. By means of an addition to the trust instrument, apparently inserted and dated December 26, 1935, the taxpayer also reserved to himself as grantor the right to substitute a trustee for the one named in the trust instrument.

We held the net income of the trust for 1935 to be taxable to the taxpayer-grantor. We stated that it might be argued that the provision that the grantor could substitute a trustee would render inapplicable the doctrine of *Helvering* v. *Clifford*. We then proceeded to say:

Omitting the power to substitute trustees, petitioner had still contrived to retain in himself, "so long as I live the right to instruct the trustee as to any change in such investment both as to principal fund as well as the income thereof that may not be distributed  *  *  *"; "to vote or direct the voting of the stock covered by this trusteeship"; "the trustor himself during his lifetime more or less directing investments"; to obtain the reversion of the corpus on January 1, 1936, unless otherwise directed by him; and, in the meantime, to have the income remain in the family and be paid to petitioner's wife, or if the wife had died to be paid over to trusts established by petitioner for the benefit of his children in his will. The "principal investment" of the trust was stock of the company in which petitioner was "actively interested."

After comparing the aspects set out in the above excerpt from the opinion with the substance of the Supreme Court's conclusion in

*Helvering* v. *Clifford*, 309 U. S. 331, we concluded that the grantor of the trust was taxable with the net income thereof in the year 1935 on the principle of that case as applied to section 22 (a), saying with regard to the grantor:

He does control the form and manner of the investment of both principal and undistributed income. And he does remain in a position to participate in the affairs of the business in which he is actively interested, a prerogative which proceeds from the retained equivalent of ownership of his interest in that enterprise. This is an attribute of proprietorship frequently of greater significance than the right to receive income. When we combine it with the power to force the retention of that investment and the "benefits flowing to him indirectly through the wife" we can not avoid the conclusion that "With that control in his hands he would keep direct command over all that he needed to remain in substantially the same financial situation as before."

In the *Hoover* case, as here, the taxpayer created a trust in which he retained, as grantor, the absolute control of investments and reinvestments of a trust corpus consisting of stocks in a corporation in which he was actively interested and the accumulations of income therefrom. In that case, as here, the trust was for an indeterminate term, as distinguished from a short term, since the trust there, as it related to the taxable year 1935, was to terminate on a certain date if the grantor were living, but was to continue thereafter for the life of his wife if he were not; while here the trust was to continue until the death of the survivor of certain beneficiaries of the net income unless sooner terminated by direction of the wife of the grantor under the power given her in the trust instrument. It thus clearly appears that in the *Hoover* case, as it related to the year 1935, the trust was of an indeterminate duration, as here, and in neither could it be said that there was a short term trust. In the *Hoover* case, as here, the stock comprising the corpus of the trust estate was in a corporation in which the petitioner was actively interested, as a large stockholder, director, and chairman of its executive committee.

In *Verne Marshall*, 1 T. C. 442, we also considered a situation very similar to the one presented here. There the grantor created an irrevocable trust, not subject to alteration or amendment by the grantor, with himself, his wife, and another individual as trustees. The trustees were to collect the income and pay the wife an annuity therefrom so long as she lived. In the event that the wife predeceased the grantor the trust was to terminate and the property be distributed to the grantor. If at any time a conflict of opinion existed among the trustees as to any decision to be made in the administration of the trusts, the opinion of the grantor was to control. The grantor reserved the right "at his option to direct the Trustees to retain any investment at any time held  *  *  *  or to direct the sale or exchange of such investment and to designate the stocks, bonds or other property  *  *  *

in which the trust fund or any reinvestment thereof shall be invested, or to direct the issuance of voting proxies under any stock * * *."

In deciding that the income of the trust was taxable to the grantor, notwithstanding the trust was not for a short term, we said, *inter alia:*

> Shorn of its legal phraseology, the trust instrument leaves in the settlor practically every power which he had over his property prior to its execution * * *. The income "remains in the family" and he retains complete control over the investment, thereby having "rather complete assurance that the trust will not affect any substantial change in his economic position." Such lingering doubt that this is true as may exist from an examination of some of the provisions of the trust, including the provision for plural trustees, is dispelled by the provision making petitioner's opinion and discretion controlling. Therefore, the facts in the instant proceeding are, in essence, parallel to those in the *Clifford* case, save in one particular—the length of the term.

The fact that in the *Hoover* and *Marshall* cases the trust estate might revert to the grantor, while here it would not, is not, we think, of weighty significance, in view of the complete control of the trust funds which could be exercised here by the grantor during the continuance of the trust. *Ellis H. Warren*, 45 B. T. A. 379, 384; affd., 133 Fed. (2d) 312; *Frederick B. Rentschler*, 1 T. C. 814. 818. For the same reason, even though the trust here is not a short term trust, such fact is also of no weighty significance. *Ellis H. Warren*, *supra; Morton Stein*, 41 B. T. A. 994; *Verne Marshall, supra.* "The test is the degree of dominion and control which the grantor has over the trust property." *Frederick B. Rentschler, supra,* and authorities cited; *Louis Stockstrom*, 3 T. C. 255, 259.

While in the *Hoover* and *Marshall* cases the grantor reserved the right to vote the stock comprising the corpus of the trust estate and here he did not do so, such a difference is also, we think, not of weighty significance, especially in view of the fact that petitioner, as a cotrustee, had such right in conjunction with his wife, the other cotrustee, and could have alone, as cotrustee, prevented the voting of such stock by his failure or refusal to join with his wife in doing so should she desire the stocks to be voted contrary to his wishes. This fact in itself constituted a large measure of control over the voting of the stock even though the probability of his wife, as cotrustee, concurring in grantor's decision as to such voting be not considered. (See *Chas. F. Roeser*, 2 T. C. 298.)

We can perceive no material difference between the essential facts in the *Hoover* and *Marshall* cases and the essential facts here which would justify a different conclusion here from that reached in those cases.

In view of the complete control retained by the petitioner, as grantor, in the trust estate as evidenced by the fact that the trustees could make no sales, investments. or reinvestments except through in-

structions of petitioner, even when such sales and reinvestments might be necessitated by reorganization, merger, or other capital readjustment of any corporation whose stock was held at any time in the trust, and in further view of the large measure of control held by him as cotrustee over the voting of the trusteed stock of the corporation in which he was actively interested, and in further view of the fact that the trust instrument provided that the trust income might be used by the two trustees, of which petitioner was one, to discharge petitioner's legal obligation to maintain, support, and educate his children, we hold that the income of the trust here involved is taxable to petitioner under section 22 (a) of the Revenue Act of 1938.

The case of *John Stuart*, 2 T. C. 1103, cited by petitioner, is distinguishable on its facts, among others being the important fact that, while the grantor there reserved the right to direct the trustees at any time and from time to time to sell the corpus or any part thereof and to reinvest the proceeds as the grantor should direct, other terms of the trust instrument empowered the trustees to do likewise. So it would seem that if and until the grantor exercised his right the trustees could exercise their rights to sell and reinvest. Here, no such right was reposed in the trustees, since, under paragraph 4 of the trust instrument, the trustees could sell "any or all of the trust property" *only* upon direction of the grantor and mandatorily should invest and reinvest in other property at such prices and terms as were contained in written directions from the grantor.

Petitioner contends that if the 1938 income of the trust is held to be his income and the tax rates obtaining on February 8, 1943, should be applied, the resulting tax would be equal to 121 percent of his personal income apart from the trust income, and that, since under New York law he can not pay any part of such tax out of the trust estate, or recoup it therefrom, it would have to be paid out of his capital and consequently would be in violation of the Sixteenth Amendment. The only showing made on this point was by the following question asked and the answer made thereto by petitioner:

> Q. Mr. Cushman, have you at the present tax rate calculated what would be the tax, including a tax to you, of all of the income of this trust, plus the tax upon your own income, what per cent. that would make of your income?
>
> A. The calculations show 121 per cent.

The shortest answer to this contention of petitioner is that it is his tax for year 1938 and not 1943 which is before and concerns us and that the rates obtaining on February 8, 1943, being different from and higher than those obtaining in the taxable year, are not to be applied in computing the income of petitioner for the taxable year. There is obviously no merit in this contention of petitioner.

Having decided that the income here involved is taxable to petitioner under section 22 (a), *supra*, it is unnecessary to consider whether it is taxable under section 167 (a) (1) and (2) of the Revenue Act of 1938.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

DISNEY, *J.*, dissents.

———

ARUNDELL, *J.*, dissenting: There are few cases which have provoked such wide spread litigation as *Helvering* v. *Clifford*, 309 U. S. 331. We have here a far cry from the simple facts underlying that wholesome decision, yet the facts in the instant case are said by the majority to require a similar treatment. There is no doubt that some opinions of this Court seem to point in the direction taken by my colleagues, but I think no case goes quite so far. *Frederick B. Rentschler*, 1 T. C. 814, now on appeal to the Second Circuit; *Louis Stockstrom*, 3 T. C. 255, now on appeal to the Eighth Circuit. *Frank G. Hoover*, 42 B. T. A. 786, heavily relied on by the majority opinion, is not in point, as that was a case of a short term trust; *Verne Marshall*, 1 T. C. 442, also cited, was largely based on *Howard Phipps*, 47 B. T. A. 357, which was reversed on appeal. Many of our opinions have sought to restrict *Clifford*, *supra*, more nearly to the facts which prompted the Supreme Court's utterance. *Lolita S. Armour*, 41 B. T. A. 777; affd., 125 Fed. (2d) 467; *Frederick Ayer*, 45 B. T. A. 146; *Emma B. Maloy*, 45 B. T. A. 1104; *Meyer Katz*, 46 B. T. A. 187; affd., 139 Fed. (2d) 107; *Lura H. Morgan*, 2 T. C. 510; *George H. Whiteley*, 2 T. C. 618; *W. C. Cartinhour*, 3 T. C. 482; *Estate of Benjamin Lowenstein*, 3 T. C. 1133; *David Small*, 3 T. C. 1142; see also *Jones* v. *Norris*, 122 Fed. (2d) 6; *Commissioner* v. *Betts*, 123 Fed. (2d) 534; *Commissioner* v. *Branch*, 114 Fed. (2d) 985; *Phipps* v. *Commissioner*, 137 Fed. (2d) 141. Some opinions of this Court on the subject simply can not be reconciled. I think, in the circumstances, it would be more profitable to reexamine the fundamental factors to be considered with a view to exploring the full implications, as well as the logical limitations, of the doctrine announced in *Helvering* v. *Clifford*, *supra*.

Trusts, and particularly family trusts, are not new in our economy. They did not just find their way into our history with the advent of the Sixteenth Amendment; their birth lies in antiquity. Congress was fully conscious of this and has always provided for their taxation in the several revenue laws. By sections 161 to 172 of the Internal Revenue Code it has now established a somewhat elaborate method for their taxation and to meet the various problems that have arisen in connection with them. Stated in A, B, C language, the income of

distributable trusts is to be taxed to the distributees; otherwise the trust is to be taxed as an entity at the same rates as an individual. Sections 166 and 167 are designed to prevent avoidance and evasion of the revenue laws and, in general, these sections tax the grantor of a trust on the income by reason of certain controls retained by him in the trust instrument.

The deficiency in the instant case was determined by the Commissioner under section 22 (a) and sections 166 and 167 of the Internal Revenue Code. The trust instrument permitted the income to be used for the maintenance and education of the grantor's minor children, and *Helvering* v. *Stuart*, 317 U. S. 154, had held that if the income may be so used it is taxable in its entirety to the grantor. This latter decision disapproved of what we had held in *E. E. Black*, 36 B. T. A. 346, to the effect that the grantor was taxable only on the income which was, in fact, used for the discharge of his legal obligations. But before the instant case came to trial Congress, by section 134 of the Revenue Act of 1943, retroactively undid what *Helvering* v. *Stuart*, *supra*, required and, in effect, reinstated the rule of *E. E. Black*, *supra*. Thus, the sole basis on which the deficiency can now be sustained is section 22 (a) of the Internal Revenue Code.

It is hardly necessary to discuss section 22 (a) other than to note that it contains so broad a definition of income as to reach whatever may be defined as income within the meaning of the Sixteenth Amendment. *Irwin* v. *Gavit*, 268 U. S. 161. But, what is taxed under section 22 (a) must be the income of the taxpayer; income received by him; income used to defray his legal obligations; income subject to his direction. It must be income from his property and not the income from the property of another. This section is not like sections 166 and 167, which were designed to prevent an avoidance of the tax laws and to that end taxed income to a grantor of a trust when, in fact, the income was not received by him. The justification for imposing a tax under section 22 (a) under the rule in the *Clifford* case is that the grantor of a trust has not, in fact, made a gift of the corpus of the trust, but has retained the economic ownership of that corpus. The trust may be valid under the state law and, of course, that is true in the case even of a revocable trust, but the rationale of *Clifford*, *supra*, is that the rights reserved by the grantor are the equivalent of full ownership.

What then are the rights reserved by Cushman, the grantor in the instant case? The trust is irrevocable and he can never acquire the principal or the income. These two attributes of ownership have gone beyond his reach and for that reason alone it would at least behoove one to be cautious before announcing that what the grantor retained was the equivalent of full ownership. *Clifford*, *supra*. But, it is said

that Cushman reserved the right in his capacity as grantor (although he was also one of two trustees) to direct the trustees (himself and wife) when and at what prices to buy and sell the property constituting the trust corpus. That the trust was made in good faith for the benefit of his minor children is found as a fact by the majority, and it is also found that his purpose in establishing the trust was to divorce himself completely from the ownership of the property constituting the corpus of the trust. It is at least doubtful if reserved powers of management, however broad, can vest in the grantor of a trust attributes of ownership sufficient to give him that economic interest essential to taxation under section 22 (a). *Jones* v. *Norris, supra.* The trust in this particular case is governed by the laws of New York, and, as I understand the law of that state, as announced in *Carrier* v. *Carrier*, 226 N. Y. 114; 123 N. E. 135; *Heyman* v. *Heyman*, 33 N. Y. S. (2d) 235; and *Phipps* v. *Commissioner, supra*, a trustee or a grantor-trustee will not be permitted to deal with a trust to his own advantage, but courts of equity will always see that his actions are in furtherance of the interests of the beneficiaries and that he may not profit at their expense.

We know as a fact that Cushman did not receive the income of this trust in the taxable year. We know that the income was not used to pay his obligations, and the record is barren of any suggestion whatever that he realized any economic benefit by his retained powers of management. The full facts have been laid before us and I find in the record no basis for even a presumption or suspicion that the grantor received any economic profit by reason of his retained right of management.

It is not even suggested that the retained power of management gives to the grantor any right to revoke or alter the terms of the trust. Such a right must be found, if at all, in the instrument creating the trust; and none appears. As stated in *Helvering* v. *Stuart, supra*, the nonmaterial satisfactions that may grow out of the handling of a family trust are not sufficient to warrant taxing to the grantor the income of that trust, but there must be a gain, a profit, an economic benefit. This benefit may not be inferred, it may not be based on wishful thinking, and certainly it should not be grounded on suspicion.

I do not overlook the fact that the trust instrument by its terms permits the use of the income, should the occasion arise, for the education and maintenance of petitioner's minor children. But, I have already pointed out that section 167 of the Internal Revenue Code, as amended by section 134 of the 1943 Act, taxes the grantor only to the extent that such income is, in fact, used, and in the instant case none of the income was, in fact, so used. It would seem to me little short of judicial impertinence if this provision of the trust instrument is used

to support the taxation of the income under section 22 (a) in the face of a Congressional mandate that such income is not to be taxed to the grantor under section 167.

The Supreme Court has repeatedly admonished us to consider its words in the light of the facts, and not to lift these words out of their context. *Helvering* v. *Stuart, supra.* I fear the latter is precisely what we have done here. It would seem that before we go to the length indicated by the majority we should wait for Congress to point the way.

MURDOCK, STERNHAGEN, VAN FOSSAN, and HARRON, *JJ.*, agree with this dissent.