Annie O. Carrier, Appellant, *v.* Cassius M. Carrier et al., Respondents, and Frances E. Carrier, Appellant.

**Trusts — trust containing provision for a wife and family and other provisions suspending absolute ownership beyond two lives in being — such provisions may be separated and the first declared valid, the others invalid — when trustee may be restrained from using any part of trust fund without giving notice and security to the beneficiary.**

1. The Supreme Court has jurisdiction to remove, in its discretion, a trustee who has violated or threatens to violate his trust, or who is insolvent, or whose insolvency is apprehended, or who for any other cause shall be deemed to be an unsuitable person to execute the trust, and unless the discretion has been abused it is not subject to revision in the Court of Appeals. This power includes the power to impose terms upon which a removal will be refused.

2. A husband and wife executed an agreement with a trust company " to provide against the contingencies of business, and to provide further for the welfare of their two daughters," and in order to create a fund for that purpose the husband transferred to the trust company certain promissory notes and the family residence which was to continue to be used as a family home; the income of the fund to be used to support the family. The husband was to retain the management of the fund as long as he lived and after his death the trust company was to manage it and pay the income to the wife for her

support and that of the daughters. After both parents were dead the fund was to be divided into two parts, one for each daughter, and the principal paid to them as they respectively attained the age of thirty-five years. In the event of the death of either before arriving at that age it was to go to her issue, and if there was no issue then to the other daughter, or to her issue, and if there were none then to the heirs of the founder of the trust. Thereafter one of the daughters died under the age of thirty-five years. The husband subsequently abandoned his wife, moved to another state and the wife procured a decree of separation. This action is brought by the wife for an accounting and for the preservation of the trust estate. *Held,* that the trusts for the daughters after the death of the father and mother are void and must be so held despite the fact that the founder of the trusts admitted their validity, but in view of the dual purpose of the trust deed, first to maintain the family as a unit, and afterwards to support the daughters separately, the trust should be severed and the primary provision for the support of the family sustained as valid. *Held, further,* that notwithstanding the husband, as the creator of the trust, had reserved to himself the broadest rights of management during his lifetime, in view of the changed condition of the family, his threat to use the principal in payment of his debts and other facts showing he had become an unsuitable trustee, the court may restrain his powers as such trustee and require him to give notice and security if he desires to use or invest the tru-t funds in securities other than those in which trustees are authorized to invest.

*Carrier* v. *Carrier,* 167 App. Div. 405, reversed.

(Argued December 1, 1918; decided April 8, 1919.)

Appeal from a judgment entered May 8, 1915, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Adelbert Moot* and *Helen Z. M. Rogers* for plaintiff, appellant. The trusts created by the agreement of July 31, 1903, are valid, and do not suspend the absolute ownership of the trust fund beyond the permitted period. (*Schermerhorn* v. *Cutting,* 131 N. Y. 48; *Ripley* v. *Guaranty*

*Trust Co.*, 165 App. Div. 481; *Moore* v. *Hegeman*, 72 N. Y. 376; *Monarque* v. *Monarque*, 80 N. Y. 320; *Church* v. *Wilson*, 152 App. Div. 844; 209 N. Y. 553; *Tiers* v. *Tiers*, 98 N. Y. 568.) Even if the primary trust is measured by the lives of Mr. and Mrs. Carrier, the further provisions of the trust agreement, which unduly suspend absolute ownership, are separable, and may be struck out without destroying the general scheme and purpose of the instrument. (*Church* v. *Wilson*, 152 App. Div. 844; 209 N. Y. 553; *Greene* v. *Greene*, 125 N. Y. 506; *Matter of Colegrove*, 221 N. Y. 455; *Kalish* v. *Kalish*, 166 N. Y. 368; *Vanderpoel* v. *Loew*, 112 N. Y. 167; *Steinway* v. *Steinway*, 163 N. Y. 183; *Cammann* v. *Bailey*, 210 N. Y. 19; *Davis* v. *MacMahon*, 161 App. Div. 458; *Tiers* v. *Tiers*, 98 N. Y. 568; *Manice* v. *Manice*, 43 N. Y. 303.) The judgment of the trial court was a proper exercise of the court's power to regulate and supervise the execution of trusts, as applied to the circumstances of this case. (*Matter of Hall*, 164 N. Y. 196; *King* v. *Talbot*, 40 N. Y. 76; *Matter of Hirsch*, 116 App. Div. 367; 188 N. Y. 584; *Roosevelt* v. *Roosevelt*, 6 Abb. N. C. 447; Perry on Trusts [6th ed.], 745, § 460; *People* v. *Utica Ins. Co.*, 15 Johns. 358; *Desobry* v. *Tete*, 31 La. Ann. 809; *Una* v. *Dodd*, 39 N. J. Eq. 186; *Duncan* v. *Md. Sav. Inst.*, 10 Gill & J. 299; *Shoemaker* v. *Smith*, 37 Ind. 123; *Neel* v. *Beach*, 92 Penn. St. 221; *N. E. Mut. L. Ins. Co.* v. *Phillips*, 141 Mass. 535; *Stramann* v. *Schieben*, 7 Col. App. 1.)

*Thomas R. Wheeler* for defendant, appellant. The trusts created by the agreement of July 31, 1903, are valid and do not suspend the absolute ownership of the trust fund beyond the permitted period. (*Schermerhorn* v. *Cutting*, 131 N. Y. 48; *Ripley* v. *Guaranty Trust Co.*, 165 App. Div. 481.) Even if the primary trust is measured by the lives of Mr. and Mrs. Carrier the further provisions of the trust agreement which would unduly suspend absolute ownership are separable and may be

struck out without destroying the general scheme and purpose of the instrument. (*Matter of Abbey,* 181 App. Div. 395.) The trust agreement must be construed in accordance with the intention of the parties at the time of its execution and in accordance with the purposes sought to be accomplished by it. (*Matter of Union Trust Co.,* 86 Misc. Rep. 389; *Cook* v. *Adams,* 32 App. Div. 385; *Codman* v. *Adamson,* 138 App. Div. 317; *Murdock* v. *Gould,* 139 N. Y. 369; *Ireland* v. *Ireland,* 84 N. Y. 321; *Stramann* v. *Schieben,* 7 Col. App. 1; *Matter of Vande Car,* 49 Misc. Rep. 39; *Matter of Stevens,* 20 Misc. Rep. 157; *Deobold* v. *Oppermann,* 111 N. Y. 531.) The trial court properly exercised its equitable powers to protect the trust fund. (*Ireland* v. *Ireland,* 84 N. Y. 324; *Disbrow* v. *Disbrow,* 46 App. Div. 111; *May* v. *May,* 167 U. S. 310; *Quackenboss* v. *Southwick,* 41 N. Y. 117; *Matter of McGilvray,* 138 N. Y. 308; *Matter of Hoysradt,* 20 Misc. Rep. 265; *Pennington* v. *Metropolitan Museum of Art,* 65 N. J. Eq. 11; *Hancox* v. *Wall,* 28 Hun, 214; *Obendorf* v. *Farmers' L. & T. Co.,* 208 N. Y. 367; *Johnson* v. *Johnson,* 206 N. Y. 561; *Hughes* v. *Cuming,* 165 N. Y. 91.)

*Louis L. Babcock* for respondents. The trust agreement worked a suspension for a longer period than two lives in being at the date of the instrument and is, therefore, absolutely void. (Cons. Laws, ch. 41, § 11.) The trust agreement cannot be upheld by disregarding a portion of its provisions without destroying the general scheme and purpose of the settlor of the trust. (*Kalish* v. *Kalish,* 166 N. Y. 368; *Greene* v. *Greene,* 125 N. Y. 512; *Herzog* v. *Title Guarantee & Trust Co.,* 177 N. Y. 99; *Dana* v. *Murray,* 122 N. Y. 617; *Haynes* v. *Sherman,* 117 N. Y. 433.) The judgment of the trial court changed material terms of the trust agreement. The relief attempted to be granted grossly exceeded the power of the court. (*Von Hesse* v. *MacKaye,* 136 N. Y. 114;

[226 N. Y.]        Opinion, per CARDOZO, J.        [April,

*Van Cott* v. *Prentice,* 104 N. Y. 45; *Brown* v. *Spohr,* 87 App. Div. 522; *Perry on Trusts* [6th ed.], § 104; *Schreyer* v. *Schreyer,* 101 App. Div. 456; *Robb* v. *Washington & Jefferson College,* 103 App. Div. 327; *Lattan* v. *Van Ness,* 107 App. Div. 393; *Matter of Totten,* 179 N. Y. 112; *Hughes* v. *Cuming,* 165 N. Y. 91; *Johnson* v. *Johnson,* 206 N. Y. 561.)

CARDOZO, J. This action was brought by the beneficiary of a trust for an accounting by trustees, and for the preservation of the trust estate.

On July 31, 1903, Cassius M. Carrier, Annie O. Carrier, his wife, and the Fidelity Trust Company of Buffalo, became parties to a written agreement. The agreement recites the desire of the parties of the first and second parts " to provide against the contingencies of business, and to provide further for the welfare of their two daughters," Olive, then of the age of twenty-three years, and Frances, then of the age of five. It recites the readiness of Mr. Carrier, the party of the first part, " to create a fund for that purpose," and his desire " to retain a power of investment and management of the fund so erected as long as he shall live." It recites his ownership of the residence 789 West Ferry street, Buffalo, " occupied by himself and his family as a home." Following these recitals, a transfer is made to the trust company of four promissory notes, amounting in the aggregate to $155,000, then held by the creator of the trust. A transfer is also made of the family residence. The house " shall continue to be used as a home for the family precisely as if the conveyance thereof had not been made." No sale is to be permitted unless the parties of the first and second parts shall jointly direct. The proceeds are to be used either in the purchase of a new home, or to be added to the general fund. The fund itself " shall at all times be managed and controlled by the party of the first part. He shall attend to the

collection of the notes," and " the same having been converted into money, he shall attend to the investment thereof, and in the matter of investment his discretion shall be absolute and uncontrolled." He shall not be limited by the " rules governing investments by executors or trustees, and the trustee shall follow his directions with regard to investments without question or demur." In case the income falls below six per cent of the principal, he undertakes from his own means to make up the difference.

The fund thus created and managed is to be held upon the following trusts: The income " is to be used for the maintenance of the family which consists of the parties of the first and second parts and their two daughters, and out of the income the expenses of maintaining the family establishment are to be defrayed." On the death of the party of the first part, the income is to be paid to the use of the party of the second part for her support and the support of the two daughters. After both parents are dead, the fund is to be divided into two parts, one for the benefit of each daughter. The principal is to be paid to each daughter as she attains the age of thirty-five. In the event of her death before that age, it is to go to her issue. If there are no issue, it is to go to the other daughter or to the issue of the other; and if there are none of these, to the heirs of the party of the first part. If both daughters die before the party of the first part, he shall have a power of appointment, and after the death of the party of the second part, the money shall then be distributed as he shall direct. The party of the third part, the trust company, " shall not be responsible to anybody or in any manner for the execution of the trust," except for the safe preservation of any money or securities in its hands, until the death of the party of the first part. On his death, " it shall assume active management of the trust," but in making any investments it shall follow the directions of the party

of the second part. "After the death of both the parties of the first and second parts, then the party of the third part shall be subject to the ordinary duties of a trustee."

On February 29, 1904, the daughter Olive died. Soon afterwards, Mr. Carrier abandoned his wife, and since then has refused to live with her. The family home was sold in 1905. The proceeds were placed in the trust company, and are still there with the accrued interest. Interest at the rate of six per cent per annum has been paid also upon the four promissory notes. The income thus earned has been in part accumulated and in part devoted to the purposes of the trust. The personal and living expenses of the husband do not exceed $2,000 a year. He has a yearly income of about $4,700 from other sources. The payments made to his wife for the support of herself and her child have ranged from $3,600 to $5,000 a year. A large surplus of income, amounting to about $19,000, has been accumulated. Almost the entire principal of the estate has been reduced to cash. The promissory notes have been collected to the extent of $144,045.39. Only one note, for $10,868.92, is outstanding. The estate is thus in a form in which it may readily be withdrawn from the jurisdiction of the court. Since 1909 the husband has been a resident of Florida. He has substantially no property in New York. He is engaged in highly speculative ventures. In 1912 he made a contract to buy over 128,000 acres of timber land in Florida. The total price was $867,000. Most of it is still unpaid. The profitable development of the land requires the construction of a railroad and other improvements at a cost of about $1,200,000. The finding is that Mr. Carrier "claims that he has the right under said trust agreement to use said trust fund as his own money in paying for said Florida lands, and intends to use all of said trust fund to make said payments if the same is needed for that purpose." The wife is fearful that this use may dissipate the fund. In 1911

she sued her husband in two actions. One was an action for separation. It was tried immediately before this one, and was decided by the same judge. Separation was decreed, and an award of alimony was made for the support of the plaintiff and her child at the rate of $6,000 a year. Payments from the income of the trust were to be credited on the award. The second action is the one before us. The plaintiff alleges that the trust fund is in peril, and likely to be lost to her and her daughter or removed beyond the jurisdiction of the court. The court is asked to preserve it.

Upon these facts the trial court has granted a judgment restricting the powers of the trustees in the administration of the trust. Mr. Carrier and the trust company are enjoined from investing the principal fund or any part of it in securities other than those in which trustees are authorized by law to invest trust funds, unless thirty days' notice of intention to invest in other securities is given to the plaintiff. Upon receipt of such notice the plaintiff may apply to the court for an order restraining the defendants from making any such investment on the ground that the safety of the trust may be imperilled thereby, unless a bond is given by Mr. Carrier with prescribed conditions. Out of the income of the trust the sum of $6,000 is to be paid to the plaintiff for herself and her daughter. The rest of the income is to be paid to the husband for his own use. Limitations are imposed upon his power to borrow the principal. The trust company may loan the principal to him for his life or for a shorter period, but only upon his executing a surety company bond for its return when due, and for the payment of $6,000 of income to the plaintiff annually during her life. On his death the fund is directed to be held in trust for the plaintiff and her daughter, and thereafter it is to be held and distributed as provided in the trust agreement.

An appeal to the Appellate Division followed. That

court of its own motion raised the objection that the trusts were void. Upon the trial Mr. Carrier had admitted that they were valid. The Appellate Division found an illegal suspension of the absolute ownership (Personal Prop. Law, sec. 11; Consol. Laws, chap. 41). There was first a trust for the joint lives of husband and wife. Then there were other trusts for the benefit of the daughters with contingent remainders to their issue. The valid and invalid limitations were held to be inseparable. On that ground the judgment was reversed and the complaint dismissed.

At the threshhold stands the question of the validity of the trusts. The grantor no longer concedes that his conveyance is valid. If he did, his concession could not coerce us. The statute limiting the suspension of the absolute ownership is an expression of the public policy of the state (*Matter of Walkerley*, 108 Cal. 627, 659). In that respect it is like the rule that governs accumulations of income and restraints on alienation (*Matter of Wilcox*, 194 N. Y. 288, 289, 297). These are the " modes adopted by the common law for forwarding the circulation of property, which it is its policy to promote " (Gray on the Rule of Perpetuities, sec. 2a). The welfare of society, it is thought, does not tolerate limitations that will last throughout the ages. The living may not dictate, without restriction, the forms of ownership for posterity (*Stanley* v. *Leigh*, 2 P. Wms. 686; *Marlborough* v. *Godolphin*, 1 Eden, 404, 416; *Taylor ex dem. Atkyns* v. *Horde*, 1 Burr. 60, 115; *Bascom* v. *Albertson*, 34 N. Y. 584, 614; *Coster* v. *Lorillard*, 14 Wend. 356, 373; *Church* v. *Wilson*, 152 App. Div. 852; affd., 209 N. Y. 553; *Barton* v. *Thaw*, 246 Penn. St. 348, 364). " The interests of society require that the power of the owner to effect the alienation and suspension of ownership of an estate by future limitations shall be confined within certain limits " (notes of the Commissioners to revise the Statutes, 1 R. S. 723, secs. 14 to 22).

1919.]. Opinion, per CARDOZO, J. [226 N. Y.]

By the judgment of the trial court a trustee has been in effect commanded to do what the statute says he shall not do. There was, of course, no such purpose, but this does not change the effect. The limitations of the trust deed have been restated. The court has instructed the trustee to follow them in his disposition of the property. It has not merely held aloof, and permitted the trusts to stand. It has given active aid in confirming and enforcing them. No consent of the parties can charge a court with such a duty (*Matter of Walkerley*, 108 Cal. 627, 659; *Bailey* v. *Buffalo L. T. & S. D. Co.*, 213 N. Y. 525; *Church* v. *Wilson, supra; Schley* v. *Andrews*, 225 N. Y. 110; *Oscanyan* v. *Arms Co.*, 103 U. S. 261). We must be on our guard against confusing situations that may, at first sight, appear similar, but are in truth diverse. Sometimes the right to avoid a conveyance belongs to persons whose deed would be effective to confirm it. The controversy may arise after changes have been wrought by time. One of the trusts may have expired. A new conveyance may then validate the trusts that remain. In these and like circumstances the same effect that will be given to the conveyance may be given to consent. There may be times also when a court will refuse to act at all, and will leave the parties where it finds them (*Woodbridge* v. *Bockes*, 170 N. Y. 596, 601). This judgment does more. It furthers the illegal scheme. The creator of the trust could not nullify the statute by his conveyance. He could not compel the court to nullify it by his consent. We are not discussing now the effect as *res adjudicata* of a judgment rendered without collusion or fraud. We are still in the original action. We are dealing with the duty of the trial court to adjudge, and of an appellate court to approve. Their path of duty, we. think, is clear. They will not stir a step in aid of an illegal scheme (*Cont. Wall Paper Co.* v. *Voight & Sons Co.*, 212 U. S. 227).

We agree with the Appellate Division that the trusts

for the two daughters after the death of father and mother involve an illegal suspension of the absolute ownership for more than two lives in being. We do not concur, however, in the conclusion that the deed of trust is, therefore, void in its entirety. We think there is no reason why these ultimate trusts may not be rejected, and the primary trusts retained (*Kalish* v. *Kalish*, 166 N. Y. 368; *Harrison* v. *Harrison*, 36 N. Y. 543; *Van Schuyver* v. *Mulford*, 59 N. Y. 426; *Tiers* v. *Tiers*, 98 N. Y. 568; *Kennedy* v. *Hoy*, 105 N. Y. 134). The grantor's purpose is not doubtful. He wished to maintain the family as a unit while he and his wife or either of them lived. During that time there was to be a single trust. Its income was to be devoted to the support of the family and the maintenance of the family establishment. No one of the beneficiaries during that period had the right, irrespective of his or her needs, to any determinate proportion. For two lives and two only, this unified trust was to endure. Then there was to be a change. The parents' death would disrupt the family life. The single trust was, therefore, to be broken up into two separate trusts, one for each daughter. The duties of the trust company were thenceforth to be " the ordinary duties of a trustee." Each beneficiary was to receive her own share. The individual was to supplant the family. We think there is a line of cleavage here which the court may safely follow in decreeing a severance of the trusts. The primary purpose, the maintenance of the family, the preservation of its communal life, while the head of the family survives to preserve its unity and cohesion, that purpose is maintained. The secondary purpose, support of the daughters separately, when the family shall be disrupted and its members scattered, that purpose and that only fails. We can see no ground for the belief that the grantor would have sacrificed the one because unable to attain the other.

The plaintiff comes before the court, then, as the beneficiary of a valid trust. The question remains whether good cause has been shown for curbing the powers of her trustee. When we speak of her trustee, we mean her husband, for the duties of the trust company are merely formal. The Supreme Court has jurisdiction " to remove a trustee who has violated or *threatens* to violate his trust, or who is insolvent, or whose insolvency is apprehended, or who for any other cause shall be deemed to be an *unsuitable* person to execute the trust " (Real Prop. Law, sec. 112, subd. 2; Consol. Laws, chap. 50). " This gives a broad power to the court, and leaves the question of the removal of the trustee very largely to its discretion " (*Wilson* v. *Wilson*, 145 Mass. 490, 492; *May* v. *May*, 167 U. S. 310, 320; *Quackenboss* v. *Southwick*, 41 N. Y. 117; *Letterstedt* v. *Broers*, L. R. 9 App. Cas. 371). Unless the discretion has been abused, it is not subject to revision here. The Supreme Court did not remove this trustee, but it took measures designed to hold him to the performance of his duty. The power to remove includes the power to impose the terms upon which removal will be refused. There had been a threat to violate the trust. There had been a change of conditions, by force of which the husband had become an unsuitable trustee without some restraint upon his powers. At least, some evidence is in the record from which those conclusions might be drawn. It is true that the creator of this trust had reserved to himself the broadest rights of management. His discretion was to be " absolute and uncontrolled." That does not mean, however, that it might be recklessly or willfully abused. He had made himself a trustee; and in so doing he had subjected himself to those obligations of fidelity and diligence that attach to the office of trustee. He had power to " invest " the moneys committed to his care. He had no power, under cover of an investment, to loan them to himself. His discretion, however broad, did

not relieve him from obedience to the great principles of equity which are the life of every trust (*Globe Woolen Co.* v. *Utica G. & El. Co.*, 224 N. Y. 483; *Munson* v. *Syracuse, G. & C. R. R. Co.*, 103 N. Y. 58). But the finding is that he had threatened to borrow the principal of the fund, and use it in the payment of his debts. He did not say that he *would* use it. He said, however, that he would use it if he wished. That was a threat to abuse his power. The threat made some remedy appropriate. The form and extent of the remedy were to be determined by the trial court in the exercise of a sound discretion. The least that could reasonably be done was to restrain the threatened loan. In determining, however, whether there was need of something more, the court was not to view the threat as an isolated fact. It was to give heed to all the circumstances of a peculiar situation (*Letterstedt* v. *Broers, supra*, p. 389). Only thus could it determine whether the trustee was " an unsuitable person to execute the trust." There had been a complete change of conditions since the deed of trust was made. Husband and wife were separated. The old unity of interest was gone. The husband had the temptation, if not the purpose, to put his own welfare ahead of that of the wife who had challenged him to litigation. There was a condition of dissension and estrangement that went far, of itself, to impair his capacity for disinterested and faithful service (*Quackenboss* v. *Southwick, supra*). But this is not the whole story. The trustee had changed his residence, had left no property, or none of any substance, in this state, and had risked enormous sums in a speculative enterprise in Florida. An award of alimony had been made, but there was nothing here to be sequestered (Code Civ. Pro. sec. 1772). Nothing except the trust fund was available to the wife if it became necessary to enforce in this jurisdiction the duty of support.

We cannot say that this combination of circumstances

did not call for some preventive measures. The question is not whether the husband was a suitable trustee at the beginning. The question is whether, by reason of changed conditions, he is suitable to-day. Some persons might conclude that no one more unsuitable could readily be found. He had not emancipated himself from removal for incapacity or unfitness because, in addition to being a trustee, he was also the creator of the trust. Some measures of protection were, therefore, proper. Those that the court adopted are not unreasonable. The trustee is required to give notice to the beneficiary if he puts the money in investments not commonly permitted to trustees. The only effect of notice is to give the beneficiary the opportunity to protect herself if she finds that waste is imminent. The judgment does not say that she shall be entitled to an injunction as of course. She is to have the opportunity to apply for one. The court that hears the application will determine the gravity of the peril. Even then, the trustee may do as he pleases if he is willing to give security. Finally, the trustee is prohibited from loaning the principal to himself, except upon the condition that he give security for its return, and for a proper yield of income. He could have been restrained from loaning the money to himself at all. He is not aggrieved because a privilege which might have been withheld altogether is burdened with conditions. He is no longer bound by the covenant that the income shall equal six per cent of the value of the principal. The guarantee is one that there can no longer be an occasion to enforce. His duty to his wife is fulfilled by the payment yearly of $6,000, a sum due, in any event, by reason of the award of alimony. Any surplus income he retains for himself. These are the only restrictions that have been laid upon his powers. We cannot say that in imposing them, discretion has been abused. They will not bear oppressively on one who is acting in good faith.

The judgment of the Appellate Division should be reversed, and the judgment of the Special Term should be modified by striking out those provisions regulating or affecting the disposition of the trust fund after the death of the plaintiff and her husband, and, as so modified, affirmed, with costs to the appellants in this court and in the Appellate Division payable out of the estate.

HISCOCK, Ch. J., HOGAN and ANDREWS, JJ., concur; CHASE, COLLIN and CUDDEBACK, JJ., dissent on the ground that the agreement was not divisible and illegally suspended the absolute ownership.

Judgment reversed, etc.