ESTATE OF MILTON J. BUDLONG, INDUSTRIAL TRUST COMPANY, EXECUTOR, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7308. Promulgated September 19, 1946.

*Richard F. Canning, Esq.*, for the petitioner.
*J. T. Haslam, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: In the 1929 trusts for decedent's three children, decedent had the discretionary power, so long as he acted as trustee, to distribute, or to accumulate and add to corpus, all or any part of the income as he saw fit. Respondent contends that this power amounted to a right to designate the persons who should possess or enjoy the property or the income therefrom, and that, since decedent, by acting as sole trustee throughout his life, retained the right until the moment of his death, section 811 (c) of the code requires the inclusion in the gross estate of the value of at least so much of the property as was transferred to the trusts after March 3, 1931. Respondent further contends that decedent also had the right to expend corpus for the benefit of income beneficiaries in case of sickness or other emergency, and that it amounted to a power to alter, amend, or revoke within the meaning of section 811 (d) (2), thus bringing into the gross estate the value of the entire corpora of the trusts.

The pertinent portions of section 811 (c) and (d) (2) are set out in the margin.[3]

Respondent's argument as to decedent's power to invade the corpus is predicated upon the third paragraph of article second of the trust instrument. Petitioner contends that decedent did not have that power, but that it was intended only for a successor trustee. Though there is considerable merit in petitioner's contention, we deem it unnecessary to decide the debatable question as to whether decedent had the power. Assuming for present purposes that he did, we think, nevertheless, it is not properly characterizable as a power to "alter, amend or revoke" within the meaning of section 811 (d) (2). It is obvious that the power in question gave the trustee no absolute and arbitrary control over the corpus. On the contrary, it was conditional and limited. A definite standard—the sickness or other emergency of the respective beneficiaries—was provided to govern its exercise. Furthermore, its exercise could in no way inure to the benefit of the decedent.

---

[3] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * *.

 *   *   *   *   *   *   *

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent * * * has at any time made a transfer, by trust or otherwise, under which he has retained * * * for any period which does not in fact end before his death * * * (2) the right * * * to designate the persons who shall possess or enjoy the property or the income therefrom * * *.

(d) REVOCABLE TRANSFERS.

 *   *   *   *   *   *   *

(2) TRANSFERS ON OR PRIOR TO JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend or revoke, * * *

We have little doubt that an income beneficiary, suffering illness or other emergency, could, in the event of any arbitrary refusal by decedent to apply principal for his need, have obtained appropriate relief by a proceeding in equity. See *Barbour* v. *Cummings*, 26 R. I. 201; 58 Atl. 660; *Viall* v. *Rhode Island Hospital Trust Co.*, 45 R. I. 432; 123 Atl. 570; cf. *Carrier* v. *Carrier*, 226 N. Y. 114; 123 N. E. 135. It is equally probable that if decedent had chosen to apply principal for an income beneficiary when no sickness or emergency existed, a remainderman would have had just cause for complaint in equity. See *In re Briggs' Estate*, 150 Pa. 66; 27 Atl. (2d) 430; cf. *Helvering* v. *McCormack*, 135 Fed. (2d) 294. Clearly, the decedent did not have free rein to expend the corpus or to give it to whom he chose. In our opinion, the discretionary power to use corpus for the benefit of one not the grantor, in case of sickness or other emergency, may not be distorted into a device to alter, amend, or revoke. In such cases as *Blunt* v. *Kelly*, 131 Fed. (2d) 632; *Estate of Margaret P. Gallois*, 4 T. C. 480; *Estate of Ida Rosenwasser*, 5 T. C. 1043; and *Malcolm D. Champlin, Administrator*, 6 T. C. 280, where the trust instruments provided for the invasion of the corpus *for the benefit of the grantor* and some clear standard, such as "maintenance and support," "support, care, or benefit," "maintenance and comfort," or "comfort and maintenance," the trust corpus has been held taxable to the estate of the deceased grantor on the theory that he had an enforceable right to the corpus if need therefor should arise. On the other hand, where the trust instrument provided for invasion *for the benefit of the grantor*, yet no "external standard" was established and the invasion of the corpus rested in the absolute and uncontrolled discretion of the trustee, it has been held that the trust corpus is not taxable to the estate of the deceased grantor, because during his life he had no enforceable right to any part of it. *Commissioner* v. *Irving Trust Co.*, 147 Fed. (2d) 946. See *Estate of John J. Toeller*, 6 T. C. 832, in which the distinction between the two lines of cases is discussed at length.

The situation we have before us is just the reverse of that in the cases cited in the preceding paragraph. Here the corpus is subject to invasion, not for the benefit of the grantor, but *for the benefit of persons other than the grantor*, i. e., the trust beneficiaries. And it is simply a power exercisable by the grantor as trustee under the terms of the instrument. In such a situation we think the reverse reasoning should apply. That is to say, where, as here, the trust instrument provides an "external standard which a court may apply in compelling compliance," *Commissioner* v. *Irving Trust Co.*, *supra*, so that the beneficiary of the invasion power has an enforceable right, the grantor does not have any real control of the corpus by virtue of the power, and it accordingly should not be taxed to his estate on that account

alone. On the other hand, where no standard is provided, where the beneficiary has no enforceable right, and the invasion of corpus rests within the absolute discretion of the grantor as trustee, it may properly be said that he has that degree of control over the corpus which would justify taxing it to his estate. *Estate of Albert E. Nettleton*, 4 T. C. 987, was a case falling within the latter category. It may be that *Jennings* v. *Smith*, 63 Fed. Supp. 834, upon which respondent relies, is also a case in that category. At least it appears to us that the court concluded that there was no limit upon the grantor-trustee's exercise of the power to invade. We are not prepared to say that we should have reached the same conclusion upon the facts there present. In any event, however, if that decision is not thus distinguishable, we, with all due respect, should consider it necessary to disagree with the court's reasoning.

We pass, therefore, to a consideration of the unlimited power of the decedent to distribute the trust income or accumulate and add it to principal. In contending that this power does not warrant the inclusion of the trust property under section 811 (c), petitioner relies upon *Estate of Edward E. Bradley*, 1 T. C. 518; affd., 140 Fed. (2d) 87. We agree that that case requires the exclusion of so much of the property as was transferred to the trusts prior to March 3, 1931. This, for the reason that the amendments made to subsection (c) by the Joint Resolution of that date, one of which related to the retained right to designate the persons to possess or enjoy the property or the income therefrom, had prospective application only. *Hassett* v. *Welch*, 303 U. S. 303.

A different situation, however, is presented with respect to the transfers made after March 3, 1931. *Security-First National Bank of Los Angeles*, 36 B. T. A. 633; *Estate of Charles Ourie*, 4 T. C. 1175. As a practical matter decedent could give all the income to the primary beneficiaries or take it away and give it to remaindermen, persons other than income beneficiaries. That was a right to shift economic benefits and enjoyment from one person to another, which is, we think, contemplated by the phrase "to designate the persons who shall possess or enjoy * * * the income" from the property. Since decedent retained this right until the moment of his death—and it is immaterial that he retained it as trustee rather than as settlor, *Welch* v. *Terhune*, 126 Fed. (2d) 695—the express provisions of section 811 (c) are met, requiring that the value of transfers subsequent to March 3, 1931, be included in the gross estate.

The 1929 trust for the benefit of decedent's sister is somewhat different from the trusts for the children, in that the sister had an absolute right to a minimum payment of $2,500 per year. Except as so limited, the decedent had the same right to distribute or accumulate income,

as in the other trusts. Respondent therefore properly discounted the value of the corpus of that trust by the value of the life annuity of the primary beneficiary. As in the other trusts, however, he erred in including the value of property transferred prior to March 3, 1931.

What we have already said is dispositive also of the 1937 trusts for decedent's children. In those trusts he likewise could distribute or accumulate the income as he saw fit, thereby having retained the right to designate the enjoyment. Since all transfers to these trusts were subsequent to March 3, 1931, the values of the entire corpora are includible in the gross estate under section 811 (c).

As already stated, respondent has now conceded that the value of an additional and separate trust created by decedent for the benefit of his daughter is not includible in the gross estate. It is so ordered.

Since the parties have stipulated that additional attorneys' fees and executor's commissions occasioned by this proceeding may be proved and deduction allowed therefor, the matter can be taken care of in the recomputation.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

