Glennon, J.
This action was instituted to recover the agreed price of certain services rendered and materials sold to the defendant between December 7, 1944, and March 15, 1945. By his failure to deny, the defendant admitted the allegations of the complaint and pleaded two affirmative defenses. We are here only concerned with the first defense which alleges that plaintiffs failed to comply with the price regulations issued by the Office of Price Administration pursuant to the provisions of the Emergency Price Control Act of 1942 (56 U. S. Stat. 23; TI. S. Code, tit. 50, Appendix, § 901 et seq.). Specifically the plaintiffs are charged with violating Maximum Price Regulation 478 and the amendments thereto which were in effect and governed the transactions in question.
After the commencement of the action and before the case was reached for trial the regulations were revoked and terminated by order of the Price Administrator. During the course of the trial the court granted the plaintiffs’ motion to strike out the first defense on the ground that it was not available to the defendant since the regulations relied upon were no longer in effect. By stipulation the parties have limited the appeal to the propriety of the court’s ruling on the motion.
That the defense, if established, would defeat the plaintiffs’ claim were the regulations still in effect is not open to question. (International Spangles Corp. v. Marrow Mfg. Corp., 294 N. Y. *589 295.) Wliat then was the effect of the termination of price control? Plaintiffs maintain that upon removal of price restrictions contracts which had been entered into in violation thereof immediately became valid and enforcible. A similar contention was urged and unanimously overruled by this court in Edsil Trading Corp. v. Minder & Sons, Inc. (272 App. Div. 887).
It is well settled that the courts will refuse to lend their assistance to a party seeking enforcement of a contract entered into in violation of existing law despite the fact that the defendant also participated in the wrongdoing. (McMullen v. Hoffman, 174 U. S. 639; Continental Wall Paper Co. v. Voight & Sons Co., 212 U. S. 227; Carrier v. Carrier, 226 N. Y. 114.) The reason for the rule is obvious. Were the court to entertain such an action it would be aiding in the violation of an existing law. The courts therefore “ will not stir a step in aid of an illegal scheme ”. (Carrier v. Carrier, supra, p. 123.)
A contract entered into in violation of law is not automatically purged of its illegality by mere repeal of the prohibitory statute. Such contracts remain illegal even after repeal and continue to be unenforcible until such time as the taint of illegality is removed. That occurs only when the Legislature manifests an intention to give them validity. (Restatement, Law of Contracts, § 609; 12 Am. Jur., Contracts, § 165 and cases therein cited; Fitzsimons v. Engle Brewing Co., 107 F. 2d 712; Abrams v. Meyerowitz, 175 Misc. 625.) The holdings in Curtis v: Leavitt (15 N.Y. 9), Bloch v. Frankfort Distillery, Inc. (247 App. Div. 864, affd. 273 N. Y. 469) and Farber v. Aquino Sons, Inc. (253 App. Div. 600) are not to the contrary.
While Curtis v. Leavitt (supra) has been cited as authority for the proposition that repeal of a statute validates a contract entered into in violation thereof, the case does not support such a broad rule of law. In that case one of the many questions considered by the court was whether the repeal of a usury statute, insofar as it applied to corporations, deprived a corporation of the defense of usury as to agreements entered into prior to repeal. The repealing statute was entitled “ An Act to prohibit corporations from interposing the defence of usury ” and provided that “ No corporation shall hereafter interpose the defence of usury in any action. ’ ’ In interpreting the statute the court held that it was the intention of the Legislature to deprive corporations of the defense of usury as to all agreements whether entered into before or after the effective date of the law. In the opinion of Judge Paige, at page 228, it is stated “ The statute was intended to embrace, in the prohibí *590 tion, the setting up as a defence usurious agreements, made as well before as after the passage of the act.” By eliminating the defense of usury as to agreements entered into prior to repeal, the Legislature manifested an intention to validate such agreements and render them enforcible.
Although we aré here concerned with the revocation of regulations issued pursuant to Federal Law rather than repeal of a statute, the same principles of law apply. As its title indicates the price control legislation was an emergency measure deemed necessary to the effective prosecution of the war. One of the declared purposes of the law was to stabilize prices so as “ to eliminate and prevent profiteering.” In order to effectuate the purposes of the law it was provided that no commodity coming within the purview of the Act was to be sold or delivered at a price in excess of the maximum price fixed for the particular commodity by the Price Administrator. In prohibiting sales above ceiling it was not the intention of the Congress to merely postpone the collection of the purchase price until after the emergency period, where the charge made was in excess of the maximum price fixed. What was intended and accomplished was the fixing of the top prices which could be charged for certain commodities, during the applicability of the law. In effect the Legislature exercised dominion over a vendor’s merchandise to the extent of fixing the sales price. Any agreement to pay above such prices was illegal and unenforcible.
There is nothing in the Act which manifests an intention to Validate over ceiling sales after the removal of control restrictions. All indications are to the contrary. The saving clause preserved the right to impose penalties and enforce liabilities which accrued as the result of violations committed during the existence' of price control. While that clause applies only to the rights of the government and the consumer-purchasers it nevertheless negatives any intention -to validate agreements entered into in violation of the Act. It is a clear indication that the Legislature did not intend to in any way relieve violators from the consequences of their wrongdoing. That being so, over ceiling sales continued to be illegal and unenforcible after decontrol and unless validated by the Legislature will remain unenforcible for all time.
Moreover considerations of public policy require that aid be denied to one seeking to enforce a contract entered into in defiance of law. Were the courts to lend their assistance to the enforcement of such agreements disrespect of law would be engendered and violations of law multiplied. In this case, *591 involving as it does an emergency war measure, it would also be an injustice to those who faithfully complied with the price control legislation even though compliance on the part of some of them undoubtedly proved to be a hardship because of stocks purchased and agreements entered into before the enactment of the law.
The judgment appealed from should therefore be reversed, with costs to the appellant, the first defense reinstated and a new trial ordered.
Peck, P. J., Dore, Cohn and Callahan, JJ., concur.
Judgment unanimously reversed, with costs to the appellant, the first defense reinstated and a new trial ordered. Settle order on notice.