## CIRCUIT COURT OF THE CITY OF RICHMOND

Helen S. McIver,
as next friend and guardian, etc.

v.

H. Louis Salomonsky,
individually and as trustee, etc.

June 13, 1978

Case No. G-92-2

By JUDGE MARVIN F. COLE

The evidence discloses that the defendant by instrument dated August 5, 1974, irrevocably as grantor established five separate inter vivos trusts, one each for the benefit of his infant children, naming himself as trustee under each separate trust. The testimony at the trial of this case disclosed that the defendant was in some financial difficulty and had obligated himself to pay large sums of money in his business and enterprises, and he decided that he would like to provide for the education of his children. In order to protect himself against his creditors and to aid the children in their education, these irrevocable trusts were established. The record discloses that the defendant immediately commenced to borrow money personally from the trusts and also used the trust money in his business enterprises and on December 31, 1977, the defendant personally and the business enterprises owed to the trusts an amount in excess of $50,000.00.

This suit was filed on November 5, 1976, in which the plaintiff requested among other things that a full and complete accounting of all of the receipts and disbursements from the beginning of the trusts to date be taken and further requested that the defendant be removed as trustee under the trusts and that a substitute trustee be appointed on the grounds that the defendant failed to perform his duties as trustee in a proper manner.

The court has no difficulty whatsoever in ascertaining that the defendant has violated his duty as trustee in an aggravated manner and would no doubt have removed him from office had subsequent facts which will be discussed later occurred.

In the case of *Carrier* v. *Carrier*, 226 N.Y. 114, 123 N.E. 135, it was held that even where the trustee was himself the creator of the trust, and where by the terms of the trust he was given absolute and uncontrolled discretion in making investments for the trust, he could not properly lend trust money to himself personally.

In *Scott on Trusts*, § 170.17, it is stated that a trustee commits a breach of trust not only where he sells trust property to himself individually, but also where he uses trust property for his own benefit.

In *Bogert on Trusts and Trustees*, 2nd Edition, Section 543, it is stated that the trustee may violate the duty of loyalty by lending trust funds to himself. He thus brings into play the conflict of private and representative interest. As lender it is his duty to get the best term possible as to interest, security and maturity. As debtor his impulse is naturally in the direction of getting the money at the lowest rate and often on other terms not advantageous to the lender. If he lends to himself, he cannot give an impartial judgment as to the adequacy of the security offered. Such an investment should be voidable at the option of the beneficiary, who should be able to make the trustee replace the fund thus invested or hold the trustee for any profit made from such a loan. A loan of trust funds to a third person, with the intent of bringing indirect financial advantage to the trustee is equally disloyal.

Therefore, the court has no hesitancy arriving at the decision that the defendant would have been removed from office had he not voluntarily resigned several days prior to the hearing in this matter.

Therefore the real issue in the case boils down to the question as to whether the subsequent appointment of the defendant's attorney in this instance is appropriate.

The defendant contends that there is now no vacancy in the position of trustee to be filled by the court. Paragraph 11(a) of the trust reflects that if the original trustee resigned or otherwise was unable to serve as trustee that the attorney for the defendant, Everette D. Allen, Jr., should serve as successor trustee.

On April 10, 1978 (defendant's exhibit 2), the defendant individually and as trustee under the irrevocable trust dated August 5, 1974, entered into an agreement with Allen which documents the fact that the defendant is to resign and that Allen is to become successor trustee in accordance with the terms of the trusts dated August 5, 1974. In the agreement an arrangement concerning payment of the indebtedness of the defendant trustee to the trust estate is made. The defendant now contends that this suit should be dismissed since the court no longer has any jurisdiction over the matter. The defendant contends that a full accounting has now been given to the plaintiff in regard to the funds in the trusts; that the trustee has resigned; and that Allen is now the successor trustee acting under the terms of the trust agreement of August 5, 1974, and, therefore, there is nothing now for the court to decide.

On the other hand the plaintiff is not satisfied with this arrangement and desires this court to remove Allen as successor trustee on the grounds that there is a conflict of interest. Allen is now serving in the capacity of trustee of the trusts and in this capacity he owes a duty of loyalty to the trusts. At the same time he and his law firm are the legal representatives of the defendant and the defendant's business enterprises and therefore in their capacity as attorneys to the defendant they owe a duty of loyalty to their client. The plaintiff therefore contends that the trustee, Allen, now occupies a position that is improper and that it is impossible for Allen to properly act as trustee. The plaintiff requests that he be removed by the court as trustee and that a corporate trustee be appointed to serve and the Central National Bank has been suggested as the appropriate successor trustee to serve in this instance.

The court is now confronted with two questions. The first is whether the court has jurisdiction and authority to remove the successor trustee and secondly, in the event that the court has such jurisdiction and authority, should the court remove the successor trustee under the facts of this case.

Counsel for the defendant takes the position that the court has no jurisdiction to appoint a successor trustee where the trusteeship is purely personal and confidential and to appoint a trustee where there is no vacancy in the trusteeship. To support this contention the defendant points to the case of *Dillard v. Dillard*, 97 Va. 434 (1899), and *Roller v. Catlett*, 118 Va. 185 (1915).

The court is of the opinion that § 26-48 of the Code of Virginia is applicable to this case and is decisive of the issue involved here. This section states that when a trustee in a will, deed or other writing for any good cause shown, the Circuit Court in which such will was admitted to probate or such deed or other writing is or might have been recorded, the judge thereof may on motion of any party interested and upon satisfactory evidence of such good cause, appoint a trustee or trustees in place of the trustee or trustees named in such instrument. The question therefore resolves itself to one of fact and whether this is a case in which the trustee or trustees should be removed "for good cause shown." The Court is therefore of the opinion that it has the jurisdiction and the authority and the duty to remove the successor trustee in this case and to appoint another one if the facts in the case justify such removal.

The court further wishes to state that Mr. Allen is highly qualified and his honesty and integrity is beyond reproach and the court would have no difficulty whatsoever in approving him as successor trustee except for the fact that he and his law firm have been the attorneys for the defendant for a substantial period of time in the past and are now in fact representing the defendant.

Furthermore, defendant's Exhibit 2 filed herein indicates that Mr. Charles F. Witthoefft, attorney for the defendant in this case, and also a member of the same law firm, has been named in defendant's Exhibit 2 as the successor trustee to Allen. The question then is whether the court should remove Allen and appoint a completely impartial trustee in this matter and one that

has no contact or interest whatsoever in the trusts except to look out for the best interest of the beneficiaries.

The Virginia Supreme Court in the case of *Terry v. Fitzgerald*, 73 Va. (32 Gratt.) 843 (1879), stated the following:

> A trustee, who is to act as the agent of both parties, should have no bias or partiality which would disqualify him to fairly discharge his duty, and to do justice to both parties. Where the parties agree their counsel may act as trustees, it may be done, but where there is but one trustee, he ought not to be counsel of one of the parties, especially where, as in this case, he may have to decide questions which may be of vital interest to the adverse party.

What constitutes a sufficient ground of removal is almost fully within the discretion of the court. Before a court will order removal, some cause must be shown why the trustee ought to be removed. The court will not interfere unless some beneficial end is to be achieved thereby. The question therefore is what beneficial end is to be achieved by the removal of Mr. Allen and the appointment of another successor trustee.

As successor trustee Allen has a duty of loyalty to the beneficiaries of the trust. One of the most fundamental duties of the trustee is that he must display throughout the administration of the trusts complete loyalty to the interests of the beneficiaries, and must exclude all selfish interests and all consideration of the welfare of third persons. Reasons behind the establishment of the loyalty rule by equity are that it is generally, if not always, humanly impossible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction. Consciously or unconsciously he will favor one side or against the other, where there is or may be a conflict of interest. If one of the interests involved is that of the trustee personally, selfishness is apt to lead him to give himself an advantage. If permitted to represent antagonistic interests the trustee is placed under temptation and is apt in many cases to yield to the natural prompting, to give himself the benefit of all doubt, or to make decisions which

favor the third person who is competing with the beneficiary.

On the other hand Allen and his firm as attorneys for the defendant in this case have certain legal and ethical considerations and duties which they owe to the defendant. A quick review of the Virginia Code of Professional Responsibility indicates the duty which Allen and his law firm owe to the defendant, Salomonsky. For example, E.C. 5-14 states that maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have different interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.

Canon 5 states that a lawyer should exercise independent professional judgment on behalf of a client. And E.C. 5-1 states that the professional judgment of the lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free from compromising influences and loyalties. Neither his personal interests, interest of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.

It has been argued in this case that in the event that a conflict should arise that Allen will decline to act as attorney for Salomonsky and that he will in fact continue his loyalty as trustee to the beneficiaries. However, as I view the evidence in this case the conflict is already present. It is present at this time because the defendant, Salomonsky, is indebted to the trusts in a substantial amount and therefore the relationship of debtor and creditor exists between the parties at this time and the conflict of interest is already in existence.

Since Mr. and Mrs. Salomonsky are separated, there is every anticipation that conflicts between these parties will continue, and certainly the relationship of debtor and creditor will continue.

The only way to eliminate any possibility of irregular conduct, although such conduct would undoubtedly be unconscious, is to establish an independent trustee for the

trusts so the parties can all deal at arms length in regard to the same.

Communications between attorney and client are privileged. At the same time one partner in a law firm is charged with knowledge of all that is known to another attorney in the same firm. To me some serious problems arise with Allen as Trustee and his law firm acting as attorney for Salomonsky. (See Informal Bar Opinions # 145 and # 235).

Another factor in this case is that the custodian of the income payment has been selected as Michael Armstrong, an attorney. Mr. Armstrong according to the evidence is a close relative of another Mr. Armstrong, who is a partner of the defendant in their architectural profession. This is another example where the influence of the prior trustee has been exerted and will show the extent to which his influence can be exerted in the future.

The court is therefore of the opinion that the successor trustee, Allen, should be removed from office due to the above reasons *only*, and that a completely impartial trustee should be appointed. Therefore, the court requests that counsel confer and see if they cannot agree upon an impartial trustee to act in this matter. The court would certainly have no objection to Mr. Allen and Mr. Anderson jointly acting as trustees so that each party would have a representative which would insure impartiality of the trustee. The court certainly has no objection to the Central National Bank being appointed as has been indicated by the plaintiff. Therefore, the court requests that counsel agree upon an impartial trustee and if this cannot be done, I request that recommendations be made to me giving the names of trustees that have agreed to accept the duty, and I will then make the appointment.

In regard to the request of the plaintiff for counsel fees, I think in this case it is entirely appropriate that counsel fees be paid out of the trust funds. Normally in a situation like this I would assess the attorney's fees and costs against the defendant personally. However, he has set up this trust out of his own funds for the benefit of his children in order for them to secure their education. Since he has created this trust which is for the benefit of the children, I think that counsel fees for the plaintiff should be paid out of the trust funds themselves.