ESTATE OF JOHN J. TOELLER, FRANKLIN MAYO, ADMINISTRATOR WITH WILL ANNEXED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6890.   Promulgated April 26, 1946.

*Charles R. Sprowl, Esq.,* and *Cassius M. Doty, Esq.,* for the petitioner.

*Harold H. Hart, Esq.,* for the respondent.

834

OPINION.

KERN, *Judge*: The first question to be resolved is whether the transfers to the trust involved in this proceeding were intended to take effect in possession or enjoyment at or after the trustor's death, within the meaning of section 811 (c) of the Internal Revenue Code, as respondent contends.

Because it was executed prior to the passage of the Joint Resolution of Congress of March 3, 1931, this trust enjoys the protection of the rule announced in *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *May* v. *Heiner*, 281 U. S. 238; *McCormick* v. *Burnet*, 283 U. S. 784; and *Hassett* v. *Welch*, 303 U. S. 303. We may not, therefore, consider the reservation of a life interest in the trust income by the trustor in this connection. *Estate of Edward E. Bradley*, 1 T. C. 518; *Proctor* v. *Commissioner*, 140 Fed. (2d) 87.

The provision of the trust instrument (par. 11–E), upon which respondent chiefly relies, has been set forth in our findings.

It is the respondent's position that this provision has the effect of reserving in the trustor during his life an enforceable right to have the corpus invaded for his benefit, within the rule applied in *Blunt* v. *Kelly*, 131 Fed. (2d) 632; *Estate of Margaret P. Gallois*, 4 T. C. 840; affirmed on another ground, 152 Fed. (2d) 81; *Chase National Bank* v. *Higgins*, 38 Fed. Supp. 858; *Estate of Ida Rosenwasser*, 5 T. C. 1043; and *Malcolm D. Champlin, Administrator*, 6 T. C. 280.

Petitioner, however, argues that the power to invade the corpus was conferred on the trustee, to be exercised in its sole, absolute, and uncontrolled discretion, and did not constitute a retention by the trustor of any right. Petitioner cites and relies on *Commissioner* v. *Irving Trust Co.*, 147 Fed. (2d) 946.

A comparison of *Blunt* v. *Kelly* with *Commissioner* v. *Irving Trust Co.*, *supra*, brings into relief the critical distinction upon which the determination of this issue depends.

In *Blunt* v. *Kelly, supra,* the trust instrument provided: "Should, in their opinion the necessity arise, the Trustees are hereby empowered to use such portion of the principal of the trust fund as may seem proper for the support, care or benefit of the party of the first part."

No such invasion of the principal was ever sought or made.

The court said:

In the present case, however, the trust deed specified the circumstances under which the settlor would be entitled to receive the principal during her lifetime, namely, should the necessity arise, in the opinion of the trustees, to use the principal for her support, care and benefit. It is true that under this provision the trustees, one of whom held an adverse interest, were required to form an opinion as to the existence of any such necessity, but in so doing the trustees were not making a free and uncontrolled decision. They were of course bound to form their opinion on the existence of any such necessity in good faith and were subject to the control of the equity courts if they failed to do so. *Read* v. *Patterson,* 44 N. J. Eq. 211, 14 A. 490, 6 Am. St. Rep. 877; Restatement of the Law of Trusts, § 187. Under these circumstances, the lower court properly held that the transfer of the securities by the trust deed was one which did not take effect in possession or enjoyment until the death of the settlor, since, until then, it might have become necessary under the terms of the trust to apply the principal to her support, care or benefit.

In *Commissioner* v. *Irving Trust Co., supra,* cited by petitioner, the trust instrument contained the following provision:

The trustee may from time to time in its absolute discretion, and as often as it deems advisable to pay over, transfer, convey, assign and deliver to the Settlor all or any part of the principal of the said trust fund, at all times re-taining, however, a sufficient Principal fund to provide the income to be paid to Bertha L. Beugler as aforesaid, and upon such payment or transfer, all obli-gation of the Trustee in reference to that part of the principal so paid over shall forthwith cease.

The court distinguished *Bankers Trust Co.* v. *Higgins,* 136 Fed. (2d) 477, and *Blunt* v. *Kelly, supra,* on the ground that, under the trust instruments involved there, the settlor had a right to require payments to be made out of the trust funds in order to meet his financial needs because of other circumstances set forth in the trust instruments and independent of the mere will of the trustee. It concluded that:

* * * In a case where the return of any part of the corpus to the settlor will depend solely upon the discretion of the trustee, the true test as to its in-clusion * * * is whether the trustee is free to exercise his untrammelled discretion or whether the exercise of his discretion is governed by some ex-ternal standard which a court may apply in compelling compliance with the conditions of the trust instrument. If the former, the corpus is not subject to taxation as a part of the settlor's estate. In the case at bar, the discretion of the trustee was absolute and no court could compel its exercise.

Petitioner contends that the discretion vested in the trustee in the instant case is free and untrammeled, absolute and uncontrolled, and that we should therefore be governed by *Commissioner* v. *Irving Trust Co., supra.* His contention in this regard is based on the lan-

guage of the provision of subparagraph E of paragraph 11, already quoted and considered, that "Said Trustee is given the sole right to determine when payments from the principal sum shall be made, and the amounts of said payments," and the further language toward the end of the entire instrument, in paragraph 17, which states that:

All discretions conferred upon the Trustee by this instrument shall, unless specifically limited, be absolute and uncontrolled and their exercise conclusive on all persons in this trust or Trust Estate.

However, the use of such words as "absolute" and "uncontrolled" or "sole discretion" does not mean that the discretion conferred in the trustee is unlimited, where external standards are provided in the trust instrument for the guidance of the trustee in the exercise of his discretion. These words may enlarge the limits of the trustee's discretion, but the provision of external standards by the trustor indicates unmistakably that limits still exist. See Scott on Trusts, vol. 2, sec. 187, in which it is said:

\* \* \* The extent of the discretion may be enlarged by the use of qualifying adjectives or phrases, such as "absolute" or "uncontrolled". Even the use of such terms, however, does not give him unlimited discretion. A good deal depends upon whether there is any standard by which the trustee's conduct can be judged. Thus, if he is directed to pay as much of the income and principal as is necessary for the support of a beneficiary, he can be compelled to pay at least the minimum amount which in the opinion of a reasonable man would be necessary. If, on the other hand, he is to pay a part of the principal to a beneficiary entitled to the income, if in his discretion he should deem it wise, the trustee's decision would normally be final \* \* \*.

With regard to paragraph 17, it seems to us that the specification in paragraph 11 of the circumstances under which invasion of the corpus by the trustee is authorized constitutes the external standards to which we have already referred, and, as such, it delimits the absolute discretion of the trustee. Had the trustor intended to confer, in this respect, absolute and uncontrolled discretion, the provisions setting up the external standards would have been quite unnecessary and meaningless. The trustee is vested with discretion in the performance of many of its duties, and paragraph 17 is not without its importance with respect to them. But we do not believe it was intended to apply to paragraph 11, subparagraph E, where specific limitations are expressly set forth. Therefore, we conclude that the trustor retained the right, under the circumstances provided in paragraph 17, to the payment to him of the trust corpus and that this right was independent of the will of the trustee.

The application of the "true test" suggested by the court in *Commissioner* v. *Irving Trust Co.*, *supra*, to the facts in this case effectively demonstrates the existence here of that distinction upon which the courts have consistently relied in the solution of these questions. The trust instrument involved here provided the external standards

which are so important as to be virtually decisive of the issue. We therefore follow the decisions in *Blunt* v. *Kelly, supra*, and *Estate of Ida Rosenwasser, supra*, and conclude that the trust corpus is includible in the gross estate for estate tax purposes.

Petitioner next urges that, if any part of the trust estate is held includible in the grantor's taxable gross estate, the value of the interest reserved in the trustor, as of the date of his death, was much less than the statutory exemption granted under the Federal estate tax laws, so that no tax ever became due or payable.

The theory which gives rise to this contention is that any right which he might have to compel invasion of the corpus for his benefit would be limited to a right to so much of the corpus as would be necessary, in addition to his share of the income, to meet the trustor's living expenses in the event of misfortune and sickness. Petitioner argues that the trustor's life expectancy at the time of his death was approximately 9½ years, and that had he lived at least $5,000 per year could have been paid out of the corpus without reaching the amount of the statutory exemption, and he concludes that no court, in the exercise of reasonable judgment, could or would in any event have ordered the use of so great an amount for the trustor's benefit. With that conclusion we are unable to agree. The term "sickness or misfortune" used in the trust instrument is so broad in scope as to cover any conceivable form of calamity, physical, mental, or even economic, to which humanity is subject. It is not beyond the realm of possibility that the trustor's needs might approach or exceed the magnitude suggested by petitioner, or that a court would decide that his care, in that event, would be of greater importance than the ultimate inheritance of his former wife and children, of whom only one was still a minor in the later years of the trustor's life. The exigencies of life are such that the probabilities in this regard can not be accurately measured. The important point is that the possibility was present, by reason of the language employed by the trustor, and no limit was imposed on the extent to which the corpus could be so applied, beyond the setting up of the standards which should invoke the application. Assuming the need should arise, as there set forth, and continued to exist for a period of years, the entire corpus would have been available to whatever extent it was needed. In this important respect are the facts here distinguishable from those which existed in *Bankers Trust Co.* v. *Higgins, supra*, upon which the petitioner relies, where the trust provided for the use of the corpus to make up the difference between the actual income of the trust and $60,000 per year. The court there held that it was possible to determine with reasonable accuracy, in the light of past experience, the amount of the corpus which might be subject to that use, and that

only that amount should be included in the gross taxable estate of the trustor.

We are of the opinion that the language of the trust instrument before us justifies the action of the respondent in including the entire corpus in the trust estate. See *Malcolm D. Champlin, Administrator*, *supra*.

It is, in view of this holding, unnecessary to decide whether the entire corpus is includible in the gross estate also by reason of the existence of a possibility of reverter by operation of law, or to discuss in greater detail the evidence contained in the trust instrument which respondent cites as further supporting his theory that the trust was intended as a substitute for testamentary distribution.

Section 812 (d) of the Internal Revenue Code provides for a deduction from the value of the gross estate in the "amount of all bequests, legacies, devises, or transfers * * * to or for the use of * * * any corporation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes," etc. It is stipulated that the Society of the Divine Word is an organization which fulfills the requirements of the statute.

Respondent did not allow any deduction for the value of the bequest to charity, on the ground, stated in the explanation attached to the notice of deficiency, that it was impossible to ascertain the amount of the bequest. The bequest was residual in character, and the amount was therefore not specified in the will. Respondent based his action on the fact that the will was being contested. The record discloses that the action contesting the will had, in fact, been finally settled by compromise approximately six months prior to October 13, 1944, the date of the notice of deficiency. By the terms of the compromise agreement, the charity had waived its right to one-half of the residuary estate, which was valued at $5,168.83 as of the date of decedent's death. Petitioner now claims a deduction for only half of that amount, in accordance with section 81.44 of Regulations 105, which states that:

If as the result of a controversy involving a charitable bequest or devise, the charitable organization assigns or surrenders a part thereof pursuant to a compromise agreement in settlement of such controversy, the amount so assigned or surrendered is not deductible as a bequest or devise to such charitable organization.

In view of the undisputed fact that the only two factors essential to a computation of the amount of the bequest had long since been established, i. e., the value of the residuary estate at decedent's death and the terms of the settlement determining the share to be paid the charitable beneficiary, we are of the opinion that respondent erred in failing to allow the proper deduction for this item.

With respect to petitioner's contention relating to the expenditures made by the trustee out of the trust corpus after the death of the decedent, consisting of trustee's fees, attorneys' fees arising out of an action brought by the trustee for construction of the trust, guardian *ad litem* fees made necessary by the same action, and inheritance taxes paid to the State of Illinois, we are of the opinion that none of these constitutes an allowable deduction for expenses of administration under the statute and the regulations. Sec. 812 (b) 2, I. R. C.; Regulations 105, arts. 32–35; *Frederick E. Baldwin*, 44 B. T. A. 900; *Frederick R. Shepherd*, 39 B. T. A. 38; Regulations 105, sec. 81.37.

*Decision will be entered under Rule 50.*