Estate of Frank Edwin Page, Mountain Trust Bank, Executor v. Commissioner.
Estate of Page v. Commissioner
Docket No. 69700.
United States Tax Court
T.C. Memo 1961-248; 1961 Tax Ct. Memo LEXIS 98; 20 T.C.M. (CCH) 1298; T.C.M. (RIA) 61248; August 31, 1961
Robert Ash, Esq., 1921 Eye St., Washington, D.C., and Carl F. Bauersfeld, Esq., for the petitioner. Hubert E. Kelly, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in estate taxes against the Estate of Frank Edwin Page in the amount of $133,434.41. The only question presented for our decision is: What is the amount deductible as a testamentary charitable gift under section 812(d) of the Internal Revenue Code of 1939. Findings of Fact Most of the facts in this case have been stipulated. The stipulation and the exhibits attached thereto are incorporated herein as our findings of fact by this reference. Frank Edwin Page died testate on June 26, 1954. The will of decedent, *99 which was admitted to probate in Roanoke, Virginia, provided (exclusive of preamble and subscribing recitations) as follows: FIRST: I direct that all my just debts and funeral expenses be paid as soon after my death as may be practicable, including all estate and inheritance taxes. I direct that all estate, inheritance, transfer or succession taxes or death duties, State and Federal, upon my estate or any part thereof or upon or by reason of the transfer of my estate or any part thereof passing under my Will or any Codicil hereafter executed, be paid out of the principal of my estate and that no part thereof be charged against any of the legatees, devisees or beneficiaries hereunder. SECOND: I give devise and bequeath unto my son, Frank Nelson Page, my personal effects, jewelry, clothing and household furniture. THIRD: I give, devise and bequeath all the rest and residue of my property, of every nature and kind, real, personal and mixed, wheresoever situated and howsoever held to the Mountain Trust Bank, of Roanoke, Virginia, hereinafter called the Trustee, to be held in trust as hereinafter provided. I hereby authorize my said Trustee to enter into possession of my said *100 estate and manage and invest the same as to my said Trustee may seem best, with full power to retain any investments and at all times, and from time to time, to alter, change and vary such investments. I hereby confer on my said Trustee full and absolute power to sell, convey, transfer, pledge, lease, mortgage or exchange the property, real or personal, or any part or parts thereof, composing or belonging to my said estate, whether original or subsequent investments, and in case of any sale or sales of real estate or personal property, to sell at public auction, or private sale, for cash or credit, and upon such terms and conditions as to my said Trustee may seem best. I hereby direct that no purchaser from my said Trustee shall be required to see the application of the proceeds of any sale. If I still own the property at the Northwest corner of Church Avenue and First Street, S.W. in the City of Roanoke, and have not improved it with a new building, at the time of my death, I specifically authorize my said Trustee to erect a new building or buildings thereon, if and whenever, in its opinion and judgment, it is wise to do so. And for this purpose, my said Trustee is authorized to *101 borrow money and to encumber the said property, upon such terms and for such periods of time as it may deem best and from time to time to renew the same. My said Trustee shall receive the rents, issues, income and profits of my said estate and after paying therefrom all taxes, charges and services justly incident to my said Estate, shall administer and pay the net rentals, issues, income and profits as follows: (a) To my son, Frank Nelson Page, the sum of One Hundred Dollars ($100.00) a month. If my son marries the amount is to be increased to One Hundred Fifty Dollars ($150.00) as long as he is living with his wife. (b) When my said son reaches the age of forty, I direct that in addition to the above, he be paid ten per centum (10%) of the net income from my estate. (c) When my said son reaches the age of forty, if he is in business or desires to go into business, I authorize my said Trusteee, in its sole and absolute discretion, to pay to him a sum of money not in excess of Twenty Five Thousand Dollars ($25,000.00) if my said Trustee is of the opinion that such money is needed for his business and will be handled wisely by him. The decision to pay over the said sum of money *102 to him, is to rest solely with my said Trustee and its decision in the matter is to be final. (d) If my son should become incapacitated by sickness or accident, my Trustee is authorized to use the entire net income, if necessary, for his maintenance and support. (e) After any building erected on the property at the corner Church Avenue and First Street is fully paid for, or if the said property is sold by me or by my said Trustee, then after my said son reaches forth years of age, I direct that the entire net income or Five Thousand Dollars, whichever is the lesser, be paid over to him as long as he lives. (f) The balance of the principal of my estate shall be held by my said Trustee in Trust perpetually and the income not expended as above provided, used for the College education of certain deserving boys and girls who shall be graduated from the Public High Schools of Montgomery County, Virginia. The beneficiaries of this trust shall be chosen from time to time by a committee composed of the Superintendant of Schools of Montgomery County, the Judge of the Circuit Court of Montgomery County and a representative designated by the Trustee. The selection of the beneficiaries, *103 the decision as to the amount to be expended for each, and the period over which the assistance is to be given shall rest solely in the discretion of the said Committee and it may direct my said Trustee to allow the income to accumulate from time to time in order to carry out the purposes of the trust to the best advantage. FOURTH: I hereby nominate and appoint the said Mountain Trust Bank to be Executor of my will. I give full power and discretion to my said Executor to retain for the benefit of my estate any investment which may be received or to sell the same, and also to rent, care for, sell, mortgage, pledge and convey any of my estate, real or personal, either at public auction or private sale and upon such terms and conditions as may seem best to my said Executor. In the event of any corporate change of my Executor and Trustee herein named, by merger, consolidation or otherwise, the successor corporation shall act in such capacities. The Mountain Trust Bank was appointed executor and trustee of the estate on July 1, 1954, by the Court of Law and Chancery of the City of Roanoke. Sometime thereafter in the year 1954 Lillie Wade Page, from whom decedent had obtained a Nevada *104 divorce in 1932, brought suit against petitioner in the above-named Roanoke court, attacking the validity of the divorce decree, renouncing the decedent's will, and claiming her dower interest in the real estate and her statutory share as decedent's widow. Trial of this action resulted in the court decreeing the divorce was invalid and Lillie Wade Page entitled to dower and the statutory share as decedent's widow in the distribution of the estate. Immediately after this decree was rendered on January 7, 1955, Lillie Wade Page offered to accept $2,500 in cash and a deed to certain Roanoke real estate worth $60,000 in settlement of her dower and statutory distributive share, or any other rights she might have in decedent's estate if the Mountain Trust Bank as executor and trustee would abide by the court's judgment and not appeal therefrom to the Supreme Court of Appeals of Virginia. The offer was accepted and the settlement was approved by the court, and it was carried out. In June of 1955 Frank Nelson Page, decedent's son, who was 32 years of age at the time of his father's death, filed three actions in the Court of Law and Chancery of the City of Roanoke against the bank as executor *105 and trustee of decedent's estate. The first action, where he challenged the jurisdiction of the Probate Court on the ground decedent was a resident of Richmond at the time of his death, was decided adversely to the plaintiff. The second action, in which he challenged the validity of the will, was dismissed on motion of plaintiff in June of 1956. In the third action plaintiff challenged the validity of the charitable trust and prayed that as to paragraph (f) of clause THIRD the court hold decedent died "intestate." This action was settled without trial, by plaintiff agreeing to accept $100,000 in settlement of all claims he might have against the estate. The court approved the settlement and in November 1956 the court ordered the estate to pay plaintiff $75,000 forthwith and $25,000 on January 2, 1957. It is stipulated the settlement was in addition to the amount of $8,852.66 which had previously been distributed to Frank Nelson Page by the executor. In the Federal estate tax return filed by the executor on behalf of the estate with the district director of internal revenue for the district of Virginia, petitioner claimed a deduction for a charitable bequest in the amount of $529,898.54, *106 which it computed as follows: Adjusted Gross Estate
$692,398.54
Less: Amount paid to Frank Nelson Page in compromise of
$100,000.00
his claim against Estate of Frank Edwin Page
Amount paid to Lillie Wade Page in lieu of dower
62,500.00
162,500.00
rights and widow's statutory interest in Estate
of Frank Edwin Page
Amount of Charitable Deduction Claimed
$529,898.54
It was stipulated that the sum of $529,898.54, subject to adjustments for value concessions and for Federal estate and Virginia inheritance taxes which the parties agree they can work out on a Rule 50 computation, is the residue of the net estate after the payment of the settlements with Frank and Lillie, and it is the amount the trust will receive to hold perpetually under subparagraph (f) for the charitable purpose. Respondent in his notice of deficiency stated: The charitable deduction of $529,898.54 has been
$158,909.27,
reduced to
computed as follows: Gross Estate, as corrected
$887,033.28
Less: Insurance to son
$ 2,000.00
Tangible personal property to son
855.00
Administration expenses
42,106.79
Debts
5,128.45
Mortgages
75,000.00
Property passing to spouse
62,500.00
State inheritance tax
2,150.00
Federal Estate Tax
138,234.00
327,974.24
Remainder
$559,059.04
Less: Provisions for invasion of corpus for son,
25,000.00
as provided for in the will
Net remainder
$534,059.04
Present value of a remainder subject to a life estate of an individual aged
32 -.29755 534,059.04 X.29755 = $158,909.27
*107 Opinion KERN, Judge: Testator bequeathed his residuary estate, amounting to over a half million dollars, to a trust of which testator's son and a charity were beneficiaries. The son had an immediate vested right to be paid from the income of the trust $100 a month. In addition the son had contingent rights to the trust income as follows: (1) To the payment of an additional $50 a month if and when he married and while he was living with his wife, (2) to the payment of 10 percent of the trust income if and when he became 40 years old, and (3) to the payment of whatever net income should be derived from the Church Avenue property if a building should be erected thereon or from the proceeds of that property if it should be sold, or $5,000, "which ever is the lesser." In addition the trustee was authorized in its discretion to make certain other payments to the son out of the trust income upon the happening of certain contingencies as follows: (1) To pay the sum of $25,000 if and when the son became 40 years old, was in business or desired to go into business and the trustee was of the opinion that such a sum was necessary for his business and would be handled wisely by him, and (2) *108 to pay the entire net income to the son if and when he became incapacitated by sickness or accident and such income should be necessary for his maintenance and support. The charity had the immediate right to the payment of the trust income "not expended as above provided." The son filed an action challenging the validity of that part of testator's will providing that the trust should hold principal for or pay income to the charity. That suit was settled and the son received the sum of $100,000 (in addition to other payments he had already received from the estate) in full satisfaction of all claims he might have against the estate. Thereafter the charity, as sole beneficiary, was entitled to the immediate payment of all of the income from the remaining trust assets in perpetuity undiminished by any payments to the son. The value of these assets is stipulated to be $529,898.54 to be adjusted to reflect adjustments on account of valuations and on account of estate and inheritance taxes paid by the estate to be made under Rule 50. Under these circumstances the question before us is the valuation of the amount of the bequest "to a trustee * * * to be used * * * for * * * charitable * *109 * * or educational purposes." See section 812(d), Internal Revenue Code of 1939. Respondent has determined that under testator's will the son had a life estate in the entire trust corpus, and that therefore the charitable bequest should be valued on the basis that it was a remainder interest "subject to a life estate of an individual aged 32." Accordingly, he has determined that the interest of the charity in the corpus of the trust was only a remainder interest to be valued as such in ascertaining the amount of the deductible charitable bequest. With this determination we are in disagreement. In our opinion the son received a present vested equitable life estate in the residuary trust at the time of testator's death to the extent of the payment to him of $100 a month out of income, while the charity received a present equitable interest in the balance of the trust and its income subject to the income being diminished in part by reason of the son's contingent rights to additional payments of income upon the occurrence of certain events, and subject further to its being diminished in whole or in part in the discretion of the trustee, which discretion could be exercised only upon *110 the occurrence of certain contingencies, the probability of which occurrence could not be computed by any actuarial method known to us. Upon this analysis of the facts, it seems to us that the proper method of valuing the charitable bequest is to subtract from the value of the trust corpus the sum of the values of the son's vested life interest in the trust income, his contingent life interests in such income, and his other interests which may be termed his contingent discretionary interest. It is apparent that the valuations of the sum of the son's interests outlined above would be a difficult matter. However, it is also apparent to us that the sum of the valuations of the son's interests would not be in excess of the sum which he accepted in settlement of all of his rights under the testamentary trust. He filed an action contesting the validity of certain parts of the will creating the trust for the purpose of enlarging those rights. It is inconceivable that he would have accepted in settlement of that action an amount less than the value of the rights which he would have had under the will if he had not brought the action in the first place. In effect he accepted the sum of *111 $100,000 (in addition to sums which he had already received under the will) in commutation of all of his rights (vested, contingent, or discretionary) to the trust income provided by the will and also in settlement of any additional rights which might accrue to him as an heir if the provisions of paragraph (f) of clause THIRD of testator's will were declared invalid. This settlement was approved by the court administering the will and the testamentary trust of which the son was a beneficiary. Under these circumstances, we accept the sum of $100,000 as representing the maximum value of the son's interests in the testamentary trust as of the time of testator's death. Accordingly, we are unable to agree with respondent's arguments that the settlement with the son enlarged the charitable gift over what its value would have been if no settlement had been made, or that the charity took something by way of purchase because of the settlement. In our opinion the settlement did not enlarge the charitable gift; it merely made the amount thereof ascertainable in a definite amount and in that amount it is now deductible. See Estate of John J. Toeller, 6 T.C. 832, 840, affd. 165 F. 2d 665. *112 Upon the issue before us we decide in favor of petitioner. Decision will be entered under Rule 50.