Estate of Thomas W. Streeter, Deceased, Basil O'Connor, Executor, and Ruth Cheney Streeter, Executrix v. Commissioner.
Estate of Streeter v. Commissioner
Docket No. 5428-69.
United States Tax Court
T.C. Memo 1971-260; 1971 Tax Ct. Memo LEXIS 72; 30 T.C.M. (CCH) 1118; T.C.M. (RIA) 71260; October 7, 1971, Filed. Morris B. Abram, James B. Lewis, and Michael A. Varet, for the petitioner. Leo A. Burgoyne and John P. Reis, Jr., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent has determined a deficiency in estate tax against the petitioner in the amount of $1,165,993.90. The parties have settled certain issues and the only question remaining for decision is whether *73 petitioner is entitled to deduct as an administration expense $490,292.89 of sales commissions paid in connection with the sale of decedent's collection of books, pamphlets, broadsides, maps, and similar properties. Findings of Fact Some of the facts have been stipulated and are, together with the exhibits attached to the stipulation, incorporated herein by this reference. Ruth Cheney Streeter and Basil O'Connor are the executors of the will of Thomas W. Streeter, deceased. On the date the petition herein was filed, Ruth Cheney Streeter's legal residence was in Morristown, New Jersey, and Basil O'Connor resided in New York City. The estate tax return was filed with the district director of internal revenue at Newark, New Jersey. 1119 The decedent died testate on June 12, 1965. He was survived by his wife, Ruth Cheney Streeter, and by all four of his children, Frank S. Streeter, Henry S. Streeter, Thomas W. Streeter, Jr., and Lillian Streeter Chance, all of whom are still living. The decedent's will was admitted to probate and administration of the estate was initiated on June 25, 1965, in the Surrogate's Court for Morris County, New Jersey. At the time of his death, *74 decedent owned a collection of books, pamphlets, maps, broadsides, historical manuscripts, bibliographies, and similar properties relating to American history (hereinafter referred to as the Americana Collection). The fair market value of the Americana Collection as of the date of the decedent's death was $2,000,000. By Article TWENTY-FIRST of his will, decedent bequeathed his Americana Collection as follows: TWENTY-FIRST: I give and bequeath my "Americana Collection," to my trustees hereinafter named in Article TWENTY-SIXTH of this my last Will and Testament, IN TRUST, NEVERTHELESS, for the following purposes: 1. I direct my trustees to dispose of it by sale, leaving it to the sole discretion of my trustees whether the sale or sales shall be of all or part or parts thereof and whether the sale or sales shall be entirely or partially at public auction or entirely or partially at private sale. The time of the sale or sales of my "Americana Collection" and the terms of the sale or sales shall be within the sole discretion of my trustees, who shall have no personal liability for the extension of any credit or credits in connection with such sale or sales which may prove unwise or *75 for any other errors in judgment. Paragraphs 2 through 4 direct the trustees to pay the first $414,000 of the net sale proceeds to numerous institutions, libraries, and historical societies in various amounts and proportions. 5. In directing that my "Americana Collection" be sold, I have in mind that some items in the collection have a low market value and that it would be inadvisable to include such items in a public sale. Accordingly, I authorize my trustees to dispose of by gift to any public or institutional library parts of the "Americana Collection" not in the aggregate exceeding Ten Thousand Dollars ($10,000) in appraised value. 6. It is my wish that my trustees employ as consultants in all matters relating to the disposition of my book collection my friends, MICHAEL J. WALSH of Goodspeed's Book Shop, Boston, Massachusetts, LINDLEY EBERSTADT of Edward Eberstadt & Sons, New York City, New York, ROLAND A. L. TREE of Henry Stevens, Son & Stilles, London, England, and Larchmont, New York, and LAWRENCE C. WROTH of Providence, Rhode Island, former director of the John Carter Brown Library. The said consultants acting hereunder shall be paid an honorarium of One Thousand Dollars *76 ($1,000) each and they or firms or corporations in which they may be members or officers or shareholders, may also act as appraisers, if desired so to act by my executors and receive additional compensation for such appraisal work. 7. It is my wish that the sale of my "Americana Collection" shall be completed within twenty-one (21) years from the date of my death and I direct that the proceeds from the sale of said "Americana Collection" be applied by my trustees in the following order: (a) To the payment of all expenses and charges incident to carrying out the trust including the honorarium to be paid to each of the consultants hereinbefore named. (b) To the payment of the bequests to the institutions named in Article TWENTY-FIRST, paragraphs 2 and 3 thereof. (c) To the payment of the balance of said proceeds, if any, when and as received, in equal shares to my children then living at the time of such receipt, and the issue then living of any deceased child or children of mine, such issue of any deceased child to receive per stirpes the share that such child would have received if then living. By Article TWENTY-SIXTH of the will, the decedent appointed Basil O'Connor and *77 Ruth Cheney Streeter as the executors of the will and as trustees of the trust created by Article TWENTY-FIRST of the will. On June 23, 1965, the appointed trustees filed forms of "Acceptance of Trusteeship and Qualification of Trustee" with the Morris County Surrogate's Court. Article TWENTY-SEVENTH of decedent's will provides: TWENTY-SEVENTH: The work "executors", wherever used in this Will, shall be deemed to refer to the executors herein named, or the survivors or survivor of them and/or their successor or successors, and the word "trustees", wherever used in this Will, shall be deemed to refer to the trustees herein named, or the survivors or survivor of them and/or their successor or 1120 successors, and any surviving or successor executors and/or trustees acting hereunder shall have the same rights, duties, powers, authority, titles and discretions as are herein granted to the executors and trustees named. Shortly after decedent's death the executors began to assemble and catalogue the Americana Collection and arrange for its appraisal. On or about March 4, 1966, the executors transferred the Americana Collection to themselves as trustees. In May 1966 Basil O'Connor *78 and Ruth Cheney Streeter, as trustees, entered into an agreement with Parke-Bernet Galleries, Inc. (hereinafter referred to as Parke-Bernet). Under this agreement, together with a supplemental agreement executed between the same parties in March 1967, Parke-Bernet was to sell the Americana Collection in a series of auctions commencing in October 1966 and ending in October 1969. In addition to the Parke-Bernet arrangement, the trustees sold minor portions of the collection in private sales as follows: Purchaser
Date of Sale
Proceeds
Goodspeed's Book Shop
Nov. 13, 1969
$ 7,000.00
Goodspeed's Book Shop
Feb. 25, 1970
3,342.50
Goodspeed's Book Shop
Dec. 1, 1970
7,000.00
Edward Eberstadt & Sons
Nov. 13, 1970
7,000.00
American Antiquarian Society
May 5, 1970
30,000.00
The gross sales proceeds realized, the commissions deducted by Parke-Bernet, and the net sales proceeds received by the trustees from each of the seven sales were as follows: Parke-
Bernet
Gross
Parke-Bernet
Sale
Date of Sale
Proceeds
Commissions
Net Proceeds
I
Oct. 25-26, 1966
$ 616,915.00
$107,960.13
$ 508,954.87
II
Apr. 19-20, 1967
873,090.00
140,540.63
732,549.37
III
Oct. 24-25, 1967
598,185.00
89,727.75
508,457.25
IV
Apr. 23-24, 1968
397,665.00
59,649.75
338,015.25
V
Oct. 22-23, 1968
247,367.00
37,105.13
[1] 210,262.87
VI
Apr. 22-23, 1969
225,025.00
[2] 33,761.25
191,263.75
VII
Oct. 21-22, 1969 143,655.00
21,548.25
122,106.75
$3,101,902.00
$490,292.89
$2,611,609.11
*79 The trustees paid the $414,000 of legacies to the beneficiaries provided in Article TWENTY-FIRST, paragraphs 2 through 4 of the will as soon as sufficient proceeds were received. On December 18, 1969, the trustees distributed $1,000,000 to the decedent's four children. The remaining net proceeds are being retained by the trust until all Federal tax liabilities are resolved. Pending that resolution, the trustees have invested said funds in short-term Treasury bills. Basil O'Connor and Ruth Cheney Streeter received $125,000 for their services as executors and $39,000 as trustee's commissions. The executors, treating the $490,292.89 of commissions paid to Parke-Bernet as expenses of the estate, deducted that amount from the gross estate. In calculating the deficiency, respondent determined that the Parke-Bernet commissions were expenses of the trust and disallowed the deduction on the estate tax return. Opinion The question to be decided is whether the commissions of $490,292.89 paid in connection with the sale of the Americana Collection *80 are properly deductible by the trust which held the collection or by the estate of Thomas W. Streeter. Much of respondent's argument is devoted to establishing the legal existence of the trust in question. Petitioner, on brief, however, concedes the existence of an active legal testamentary trust separate and apart from the estate itself. Petitioner contends, however, that in operating and administering the trust the trustees were performing services executorial in nature and therefore the expenses incurred and paid by them relating to the trust should be deductible by the estate. 1121 Section 2053, Internal Revenue Code of 1954, [1] provides for a deduction from the gross estate of administration expenses. While the section provides little definitional assistance, the regulations promulgated thereunder attempt to explain the purport of "administration expenses." *81 Section 20.2053-3(d) (2), Estate Tax Regs; makes it quite clear that included within the scope of administration expenses are "[expenses] for selling property of the estate * * * if the sale is necessary in order * * * to effect distribution." The regulation further provides that brokerage or auctioneer fees are within the scope of "[expenses] for selling property." Following the natural progression, the question herein becomes whether the brokerage fee or commissions paid to Parke-Bernet were necessarily incurred "in order * * * to effect distribution" of the estate. For reasons stated hereinafter, we think the answer is no. That there is a valid active legal trust is unquestioned by petitioner. We think it equally clear that the trust through its trustees had functions to perform separate and distinct from those of the executors of the estate. At the heart of petitioner's argument is its assertion that the functions performed by the trustees could have easily been performed by the executors of the estate. True as this may be, it is inapposite. The decedent clearly intended that *82 his executors and trustees wear different hats when performing separate functions, for had he intended otherwise he would have given them only one. A trust created to provide for contingencies does not disappear when operated in a fashion to avoid the occurrence of an undesirable circumstance. For instance here, effective liquidation of decedent's collection could have required up to 21 years so as not to flood, and thereby depress, the market. To avoid unduly prolonging the closing of his estate, decedent saw fit to accomplish liquidation of his Americana Collection by creating a separate and distinct entity. That the trustees were able to accomplish liquidation within five years rather than 21 does not warrant concluding that the trust was superfluous. Moreover, we hasten to point out that the common recipients under the trust and under the remainder of the will were only four in number, i.e., the decedent's four children. In addition thereto, the trust had an enormously complicated scheme of distribution to a large number of institutions. Decedent might well have accomplished his goal *83 via his estate, but instead he chose to administer disposal of his collection through the trust. Petitioner argues that the substance over form doctrine of Gregory v. Helvering, 293 U.S. 465 (1935), requires a decision in its favor. On the contrary, a substance over form analysis only fortifies the result reached herein. The form is cast in the dual setting of an estate and separate trust. The above discussion, however, illustrates that the substance of the transaction was likewise that of a trust distinct from the estate. We therefore conclude that distribution by the estate was effected upon delivery of the Americana Collection to the trust; that the expenses thereafter incurred by the trust were so incurred due to the operation of the trust and therefore are properly deductible only by the trust. See Estate of John J. Toeller, 6 T.C. 832 (1946), affd. 165 F. 2d 665 (C.A. 7, 1948). Lastly, the parties appear confused as to whether an issue exists involving the deductibility of the $39,000 trustee commission paid by the trust. Petitioner claims *84 that this is not in issue and that the deduction has properly been taken against income by the trust. We treat this as a concession 1122 and hold, as respondent contends, that the said commission is not deductible by the estate. Decision will be entered under Rule 50. Footnotes
1. The parties stipulated to these figures. The $1 discrepancy in sale No. V is not explained. ↩
2. Includes a $7.50 storage charge.↩
1. Sec. 2053 reads in pertinent part: SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES. (a) General Rule. - For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts - (1) for funeral expenses, (2) for administration expenses, (3) for claims against the estate, and (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered. (b) Other Administration Expenses. - Subject to the limitations in paragraph (1) of subsection (c), there shall be deducted in determining the taxable estate amounts representing expenses incurred in administering property not subject to claims which is included in the gross estate to the same extent such amounts would be allowable as a deduction under subsection (a) if such property were subject to claims, and such amounts are paid before the expiration of the period of limitation for assessment provided in section 6501↩.